369 S.E.2d 386 (1988)
NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY
v.
Mildred J. HILLIARD and State Farm Mutual Automobile Insurance Company.
No. 8710SC1147.
Court of Appeals of North Carolina.
June 21, 1988.
*387 Henson Henson Bayliss & Coates by Paul D. Coates, Greensboro, for plaintiff-appellant.
DeBank, McDaniel, Heidgerd, Holbrook & Anderson by Douglas F. DeBank, Raleigh, for defendant-appellee.
EAGLES, Judge.
In this declaratory judgment action between two insurance companies to determine the order of payment to an individual insured under two separate underinsurance policies, the trial court ordered Hilliard's "own insurer," Farm Bureau, to pay first. We reverse and remand.
Since this accident occurred on 8 July 1985, the 1983 version of G.S. 20-279.21 applies. The General Assembly has amended the statute twice since. The only issues before us are the order of payment between the two insurors and the amount of each insuror's share of the settlement figure.
"Underinsurance" provides a type of insurance coverage that allows an insured to be indemnified by his own insurer, in whole or in part, for damages caused by a negligent motorist who is insured inadequately. 2 A. Widiss, Uninsured and Underinsured Motorist Insurance Section 32.1. G.S. 20-279.21(b)(4) defines an underinsured highway vehicle as
a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the owner's policy.
Both insurance companies agree that Hilliard is an insured under their respective policies and that she is entitled to underinsurance coverage from both. State Farm argues, however, that there is a fundamental difference between the two policies which makes the State Farm policy excess to the Farm Bureau policy. State Farm points out that Hilliard had an explicit contractual relationship with Farm Bureau since she directly paid and contracted for her policy with Farm Bureau. Hilliard was a State Farm insured only as a third-party beneficiary based on her sister's purchase of an automobile liability policy with State Farm. State Farm argues that since Hilliard made no premium payments on the State Farm policy, she must look first to Farm Bureau for indemnification of her damages. We disagree.
State Farm's underinsurance provision provides that any family member is a *388 covered person. In addition, our Supreme Court has ruled that the Motor Vehicle Safety and Financial Responsibility Act (Act), G.S. 20-279.1 et seq, becomes a part of every insurance liability policy written. Insurance Co. v. Chantos, 293 N.C. 431, 238 S.E.2d 597 (1977).
For uninsurance and underinsurance coverage G.S. 20-279.21(b)(3) establishes two separate classes of insureds. Crowder v. N.C. Farm Bureau Mut. Ins. Co., 79 N.C. App. 551, 554, 340 S.E.2d 127, 129, disc. rev. denied, 316 N.C. 731, 345 S.E.2d 387 (1986). The statute's first class of "persons insured" are "the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise." G.S. 20-279.21(b)(3). Hilliard and her sister, State Farm's named insured, lived in the same household. Accordingly, Hilliard was a "person insured" under the State Farm policy. Further, she was in this first class of insureds under both policies.
In Crowder this court explicitly "allow[ed] underinsured motorist coverage for insureds operating, or riding in, a non-owned vehicle." [Emphasis in original.] Crowder at 555, 340 S.E.2d at 130. The insured there was the named insured's minor son. Implicit in the Crowder holding was the idea that who actually paid the premiums for insurance coverage was irrelevant to the issue of whether or not coverage applied. See also Hunt v. State Farm Mut. Ins. Co., 349 So.2d 642 (Fla.Dist.Ct. App.1977). Similarly here, we reject the argument that these two policies should be treated differently as a matter of law. We decline to discriminate between these two insurance policies based upon the fact that the insured actually paid the premiums on one policy, and a third party paid the premiums on the other. So long as an insured falls within the same class of insureds established by G.S. 20-279.21(b)(3) under both policies, we see no merit in making that distinction.
We have found no provision of the Act which expressly establishes a statutory priority of payment among different insurance policies. We note that G.S. 20-279.21(i) does allow an insurance liability policy to "provide for the prorating of the insurance thereunder with other valid and collectible insurance."
Insurance policies are contracts. "[T]he parties' intent must be examined in order to properly construe each policy." Reliance Ins. Co. v. Lexington Ins. Co., 87 N.C.App. 428, 434, 361 S.E.2d 403, 407 (1987). Where there are two policies, they must be construed separately, each according to its individual terms. Allstate Insurance Co. v. Shelby Mutual Insurance Co., 269 N.C. 341, 152 S.E.2d 436 (1967). The only evidence of the contracting parties' intent is the policies.
Here each policy's uninsured motorist provision contains the following identical "other insurance" paragraph.
If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum limit of liability for your injuries under all the policies shall not exceed the highest applicable limit of liability under any one policy. In addition, if there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.
By making its policy "excess" each company attempted to limit the amount it must indemnify its insured when he is injured in a nonowned vehicle. See Carriers Ins. Co. v. Policyholders' Ins. Co., 404 A.2d 216 (Me.1979). Excess insurance clauses generally provide "that if other valid and collectible insurance covers the occurrence in question, the `excess' policy will provide coverage only for liability above the maximum coverage of the primary policy." Horace Mann Insurance Co. v. Continental Casualty Co., 54 N.C.App. 551, 555, 284 S.E.2d 211, 213 (1981). When "excess" clauses in several policies are identical and determination of which policy is primary is impossible, the clauses are deemed mutually repugnant and neither excess clause will be given effect. Alliance Mutual Ins. Co. v. Central Ins. Co., 70 N.C.App. 140, 318 S.E.2d 524 (1984).
*389 When excess clauses are mutually repugnant, the majority rule in other jurisdictions requires the insured's claim to be prorated between the two insurers according to their respective policy limits. E.g., Buckeye U. Ins. Co. v. State Auto. Mut. Ins. Co., 49 Ohio St.2d 213, 361 N.E.2d 1052 (1977). This rule "assures indemnification for the insured up to the maximum amount of coverage afforded by each policy." Id. 361 N.E.2d at 1054.
On the other hand, a minority of jurisdictions have ruled that the two insurers should pay the damages equally up to the maximum limits of the smaller policy. E.g., Carriers Ins. Co., 404 A.2d at 221. The rationale for this rule is that the majority rule discriminates against larger policies and amounts to a subsidy from the large coverage policies in favor of small coverage policies. Furthermore, proponents of this rule argue that the majority rule does society a disservice by discouraging large coverage policies. Id. at 222.
Here, the language of the respective insurance policies compels us to conclude that the two insurers must share the Hilliard settlement on a prorata basis. Because the nonowned vehicle clauses are mutually repugnant, we read the policies as if those clauses were not present. Each policy also has language that "if there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits."
Within their respective uninsured motorist provisions each policy specifically defines "limit of liability." The definition, in each policy provides, in part:
Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:
1. Paid because of the bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and
2. Paid or payable because of the bodily injury under any of the following or similar law:
a. workers' compensation law; or
b. disability benefits law.
No payment will be made for loss paid or payable to the covered person under Part D or any policy of property insurance.
Any payment to any person under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.
Each policy limits coverage to the damages not paid by the tortfeasor or his insurer. Here Hilliard received $21,571.22 from Allstate and waived payment of an additional $3428.78 for a total of $25,000. The two insurance companies together have indemnified Hilliard for her remaining damages, $50,000. Based on the plain language of each insurer's respective "limit of liability" clause, Farm Bureau was liable for a maximum of $25,000 and State Farm was liable for a maximum of $75,000. The maximum or "total of all applicable limits" that Hilliard could have collected from both underinsurance carriers was $100,000, one-fourth from Farm Bureau and three-fourths from State Farm. Accordingly, we hold that Farm Bureau must pay one-fourth ($12,500) and State Farm must pay three-fourths ($37,500) of Ms. Hilliard's damages. We reverse the judgment below and remand for entry of a judgment consistent with this opinion.
Reversed and remanded.
HEDRICK, C.J., and PHILLIPS, J., concur.