CERTAIN UNDERWRITERS AT LLOYD'S LONDON, PLAINTIFF v. JOHN V. HOGAN AND SYLVIA A. HOGAN, DEFENDANTS AND JOHN V. HOGAN AND SYLVIA A. HOGAN, THIRD PARTY PLAINTIFFS v. BEAM, COOPER, GAINEY & ASSOCIATES T/A NXS, CORPORATION, NXS, CORPORATION; AND BEAM COOPER, GAINEY & ASSOCIATES, THIRD PARTY DEFENDANTS

No. COA00-1319

(Filed 18 December 2001)

**Insurance— condominium—loss of rents—sufficiency of documentation**

The trial court did not err in a declaratory judgment action by granting summary judgment in favor of plaintiff on the issue of whether defendants have presented sufficient documentation under the terms of their insurance policy with plaintiff to entitle defendants to recover for the loss of rents resulting from their condominium being damaged and unfit to live in, because the policy was not ambiguous and its loss of rents provision requires defendants to submit a written rental contract with a third-party tenant who actually occupies or personally intends to occupy defendant's condominium.

Appeal by defendants from judgment entered 2 October 2000 by Judge Anthony M. Brannon in New Hanover County Superior Court. Heard in the Court of Appeals 18 September 2001.

*Johnson & Lambeth, by Robert White Johnson, for plaintiff-appellee.*

*Jennifer L. Umbaugh, for defendant-appellants.*

CAMPBELL, Judge.

John and Sylvia Hogan ("defendants" or "the Hogans") appeal from an award of summary judgment for Certain Underwriters at Lloyd's London ("Lloyd's") on the question of whether defendants have presented sufficient documentation under the terms of their insurance policy with Lloyd's to entitle defendants to recover for the loss of rents resulting from their condominium being damaged and unfit to live in. Having found no error of law, we affirm the ruling of the trial court.

Defendants are the owners of Condominium Unit 803 at Shell Island Resort Hotel in Wrightsville Beach, North Carolina. Defendants purchased Lloyd's insurance policy number 20982 ("the policy") to insure their condominium. Coverage B of the policy provides up to $4,000.00 of loss of use coverage, which includes coverage for loss of rents. It is undisputed that the Hogans' policy was in effect from 30 December 1995 to 30 December 1996, during which time their claim arose.

On 6 September 1996, Hurricane Fran struck the coast of North Carolina, inflicting extensive damage on Shell Island Resort Hotel. As a result of this damage, defendants' condominium was condemned for repairs from 6 September 1996 to 7 August 1997. Consequently, the Hogans filed a claim under the policy seeking recovery for loss of rents during the time their condominium was being repaired.

In support of their loss of rents claim, defendants submitted a copy of the property management agreement between defendants and MHI Recovery Management, Inc. ("MHI"), setting forth the manner in which defendants' condominium was rented prior to being damaged. Similar to the manner in which hotel rooms are rented, MHI maintained a reservations desk at Shell Island Resort which took advance and walk-in reservations, and at the time the guests arrived they were assigned (i.e., "rented") a condominium unit. MHI rented the condominium units at Shell Island Resort on a rotating basis, whereby the units with the lowest year-to-date gross rental revenue would be rented first. This rental scheme was designed to ensure that all units were rented on an equal basis.

In support of their claim, defendants also submitted a statement from MHI detailing the manner in which the condominiums at Shell Island Resort were rented, a lost business report from Shell Island Resort detailing the reservations that were canceled as a result of the

damage to the condominium units and the actual monetary losses associated with the cancellations, and a rental history of defendants' condominium showing the yearly rental revenues received by defendants from 1994-1996.

On 28 January 1997, Lloyd's denied defendants' loss of rents claim on the ground that defendants had failed to provide a written rental contract with a bona fide third-party tenant who intended personally to occupy defendants' condominium for a specific term.

Following further demands by defendants for payment, Lloyd's filed the instant declaratory judgment action seeking a declaration that defendants have not provided sufficient documentation under the loss of rents provision to warrant recovery on their claim. Defendants answered and filed a counterclaim against plaintiff for breach of contract, contending that the property management agreement with MHI was sufficient documentation to support defendants' loss of rents claim. Defendants' counterclaim further contended that plaintiff was vicariously liable for the actions of the insurance broker who procured defendants' policy. In addition, defendants filed a third-party complaint against the insurance broker, alleging breach of contract, breach of fiduciary duty, negligent misrepresentation, and unfair and deceptive trade practices.

Defendants filed a motion for summary judgment on Lloyd's declaratory judgment action. Lloyd's responded by filing a summary judgment motion of its own. Following a hearing on the motions, the trial court granted summary judgment in favor of Lloyd's. The trial court's summary judgment order was specifically limited to the issue of whether defendants had presented the documents required for recovery under the policy's loss of rents provision. The trial court's order did not in any way affect defendants' counterclaims or third-party complaint.[1] The trial court's order was properly certified for immediate appellate review pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, thereby making our review of this interlocutory order appropriate.

By their sole assignment of error, the Hogans contend that in awarding summary judgment for Lloyd's, the trial court erroneously construed the provisions of the policy. The Hogans argue that the policy's loss of rents provision is ambiguous as to whether an actual rental contract with a third-party tenant who intends to personally

---

1. Therefore, defendants' counterclaims and third party claims are not before us on this appeal.

occupy the condominium is a requirement for coverage under the provision. The Hogans contend that this ambiguity should be resolved in favor of coverage and that the provision should be interpreted in a manner that allows defendants' property management agreement with MHI to suffice as proof of loss of rents under the provision. We disagree.

"A party seeking a declaratory judgment may properly be granted summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Nationwide Mut. Fire Ins. Co. v. Grady*, 130 N.C. App. 292, 294, 502 S.E.2d 648, 650 (1998) (quoting N.C. R. Civ. P. 56(c). "The party moving for summary judgment bears the burden of establishing the lack of any triable issue, and may meet this burden by (1) proving that an essential element of the opposing party's claim is nonexistent; (2) showing through discovery that the opposing party cannot produce evidence to support an essential element; or (3) showing that the opposing party cannot surmount an affirmative defense." *N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, 138 N.C. App. 530, 532, 530 S.E.2d 93, 94-95, *disc. review denied*, 352 N.C. 590, 544 S.E.2d 783 (2000). The construction and application of insurance policy provisions to undisputed facts is a question of law, properly committed to the province of the trial judge for a summary judgment determination. *Nationwide*, 130 N.C. App. at 294, 502 S.E.2d at 650; *Walsh v. National Indemnity Co.*, 80 N.C. App. 643, 647, 343 S.E.2d 430, 432 (1986). Therefore, in the instant case, if the policy's loss of rents provision requires defendants to submit a written rental contract with a third-party tenant who personally intends to occupy defendants' condominium, summary judgment in favor of Lloyd's was proper.

We begin by noting several well-settled principles governing the construction of insurance policies. "[A]n insurance policy is a contract and its provisions govern the rights and duties of the parties · thereto," *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986), and "[a]s with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Insurance Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978). "The parties' intent may be derived from the language employed in the policy." *Rouse v. Williams Realty Bldg. Co.*, 143 N.C. App. 67, 69, 544 S.E.2d 609, 612 (2001). In determining the meaning of

the language used in an insurance policy, the following general rules of construction apply:

> Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder. Whereas, if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.

*Woods*, 295 N.C. at 505-06, 246 S.E.2d at 777; *see also Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299-300, 524 S.E.2d 558, 563 (2000). We apply these principles to the insurance policy in the instant case.

The Lloyd's policy issued to defendants contains the following relevant coverage provision:

**COVERAGE B—LOSS OF USE**

. . . .

2. LOSS OF RENTS. If a loss caused by a PERIL INSURED AGAINST makes that part of the insured premises rented to others (under a "rental contract") NOT FIT TO LIVE IN, we cover your actual loss of rents, less any expenses that do NOT continue while that part of the insured premises is not fit to live in. Loss payment will be limited to the lesser of:

A. the SHORTEST TIME required to repair or replace the part of the premises rented or held for rental;

B. NET RENTAL PROCEEDS that would be payable to you had the premises been occupied in accordance with "rental contract."

The "rental contract" for the insured premises must be:

A. WRITTEN;

B. made with a BONA FIDE THIRD PARTY TENANT (Tenant must intend to personally occupy insured premises);

C. for a SPECIFIC TERM (Specific term does not include any renewal term contained in any "rental contract" unless tenant has given actual written notice of intent to exercise its rights under the renewal term prior to occurrence of loss.).

We DO NOT cover any loss or expense due to cancellation of a "rental contract".

. . . .

Defendants contend that the language used in the loss of rents provision is ambiguous and should be construed in their favor. While they concede that the provision purports to require that the condominium actually be rented under a written rental contract with a third-party tenant who intends to personally occupy it for a specific term, defendants argue that the language in the loss payment clause clearly contemplates that defendants are entitled to payment when the property is "held for rental," even in the absence of an actual written rental contract. Defining "held for rental" to mean maintaining possession of something which is available for use in return for payment, defendants contend that the property management agreement with MHI indicates the condominium was available for use in return for payment, and is therefore sufficient documentation of loss of rents under the provision.

Lloyd's contends that the loss of rents provision is not ambiguous because the coverage section clearly requires that the condominium be rented to others under a "rental contract," which is expressly defined as a written contract with a third-party tenant who intends to occupy the condominium for a specific term. According to Lloyd's, absent a "rental contract" as defined in the provision, defendants are not entitled to coverage, and any alleged ambiguity created by the provision limiting the amount of loss payment is irrelevant because defendants have not met the coverage requirements.

Having considered the arguments of both sides, the trial court concluded that any ambiguity in the phrase "held for rental" did not affect the meaning of "rental contract," which was clearly defined and set forth four times in the provision. Finding that the documents defendants had presented Lloyd's did not constitute a contract with a third-party tenant who intended to personally occupy the condominium, the trial court granted summary judgment for Lloyds. We

agree with the trial court's decision, but differ slightly with the trial court's reasoning in reaching our decision.

The coverage clause of the loss of rents provision at issue clearly and unambiguously rests coverage on whether the condominium is "rented to others (under a 'rental contract')," and expressly defines "rental contract" as a written contract with a tenant who personally intends to occupy the condominium. The alleged ambiguity arises by operation of the loss payment clause which limits payment to "the SHORTEST TIME required to repair or replace the part of the condominium rented or 'held for rental.'" However, following well-settled principles of construction of insurance policies, and in light of the express definition of "rental contract," the phrase "held for rental" in the loss payment clause is to be interpreted in context and construed in a manner that gives proper meaning and effect to the provision as a whole. The phrase "held for rental" cannot be given a meaning that conflicts with the express definition of "rental contract." Therefore, we conclude that the provision requires the condominium be rented, or "held for rental," pursuant to a written rental contract with a tenant who actually occupies or intends to personally occupy the condominium. The phrase "held for rental" merely indicates that the condominium need not actually be occupied by a tenant at the time it is rendered unfit to live in, but that coverage will be provided if the damage to the condominium prevents future tenants under a "rental contract" from occupying the condominium. Any other interpretation of the phrase "held for rental" would contradict the express definition of "rental contract" contained in the policy. We refuse to interpret the policy in that manner.

In sum, we conclude that the loss of rents provision is not ambiguous and the trial court did not err in awarding summary judgment for Lloyd's. The trial court is affirmed.

Affirmed.

Judges GREENE and THOMAS concur.