THOMAS J. SITZMAN, PLAINTIFF-APPELLEE v. GOVERNMENT EMPLOYEES INSUR-
ANCE COMPANY, AND GEICO DIRECT INSURANCE COMPANY, DEFENDANTS-
APPELLANTS

No. COA06-342

(Filed 20 March 2007)

**Insurance— automobile—underinsured motorist coverage—
excess clauses—set off**

The trial court erred in an action involving a collision between a bicycle and an automobile by determining that the excess clauses in the GEICO and Harleysville policies that insured the

bicyclist were mutually repugnant and by ordering GEICO to pay a pro rata share of the UIM liability, because: (1) the excess insurance clauses are not mutually reputgnant since the GEICO policy is primary under both the GEICO and Harleysville excess clauses; (2) the excess clauses can be read harmoniously as determining that GEICO provides primary UIM coverage in this case, and the primary provider of UIM coverage is entitled to the credit for the automobile driver's liability coverage; and (3) the excess UIM coverage providers still get the benefit of the credit for the coverage since their UIM coverage does not apply until the liability coverage and the primary UIM coverage are exhausted. Thus, GEICO is entitled to set off the entire $100,000 of liability insurance provided by Nationwide against any UIM amount GEICO owes, and plaintiff must seek the remainder of his UIM coverage from Harleysville because GEICO is entitled to a full offset of its UIM coverage when its limit of UIM coverage is $100,000.

Appeal by Defendants from judgment entered 15 December 2005 by Judge Ronald L. Stephens in Superior Court, Durham County. Heard in the Court of Appeals 1 November 2006.

> *Glenn, Mills & Fisher, P.A., by Carlos E. Mahoney, for Plaintiff-Appellee.*

> *Law Offices of Robert E. Ruegger, by Robert E. Ruegger, for Defendants-Appellants.*

McGEE, Judge.

Thomas J. Sitzman (Plaintiff) was riding his bicycle on a road in Hillsborough on 24 May 2002 when he was struck and injured by a vehicle operated by Willie McClinton Turrentine (Ms. Turrentine). Plaintiff filed suit against Ms. Turrentine and a jury determined that Plaintiff was injured by the negligence of Ms. Turrentine and that Plaintiff was not contributorily negligent. The jury awarded Plaintiff $240,000.00 for personal injury and $955.00 for property damage. The trial court entered judgment in favor of Plaintiff, determining that Plaintiff should "recover from [Ms.] Turrentine the sum of $240,955[.00]; pre-judgment and post-judgment interest from the date of the filing of the Complaint on May 15, 2003 at the rate of 8% as provided by law; and the costs of prosecuting this action in the amount of $3,588.35."

Ms. Turrentine was insured at the time of the accident by Nationwide Mutual Insurance Company (Nationwide), "with coverage in the

SITZMAN v. GOVERNMENT EMPLOYEES INS. CO.

[182 N.C. App. 259 (2007)]

amount of $100,000.[00] for personal injury, "$5,000.[00] for property damage and costs of the action." Nationwide paid Plaintiff $106,755.28, which was comprised of $955.00 for property damage, $100,000.00 for personal injury, $3,588.35 for the costs of the action, and $2,211.93 for post-judgment interest.

Plaintiff was insured by Government Employees Insurance Company and GEICO Direct Insurance Company (collectively GEICO) under a policy which provided $100,000.00 of underinsured motorist (UIM) coverage (the GEICO policy). Plaintiff was a named insured under the GEICO policy, and the GEICO policy listed Plaintiff's 1987 Buick automobile as the insured vehicle. Plaintiff was also insured under a policy, issued in Virginia to Plaintiff's parents, by Harleysville Preferred Insurance Company (Harleysville), which provided $500,000.00 of UIM coverage (the Harleysville policy). The Harleysville policy listed a 1992 Toyota sedan and a 2001 Honda sedan as insured vehicles. Plaintiff was an insured under the Harleysville policy by virtue of being a family member of his parents, who were the named insureds. Plaintiff reached a settlement agreement with Harleysville for a portion of the remainder of the judgment.

Plaintiff filed this action against GEICO seeking to recover GEICO's pro rata share of the UIM liability. GEICO filed an answer and Plaintiff subsequently moved for summary judgment. GEICO also moved for summary judgment. The trial court granted Plaintiff's motion for summary judgment and denied GEICO's motion for summary judgment. The trial court determined that the excess clauses in the GEICO and Harleysville policies were mutually repugnant and that neither clause would be given effect. The trial court ordered GEICO to pay to Plaintiff GEICO's pro rata share of the UIM liability arising from the judgment Plaintiff recovered against Ms. Turrentine. GEICO appeals.

---

GEICO argues the trial court erred by determining that the excess clauses in the GEICO and Harleysville policies were mutually repugnant and by ordering GEICO to pay a pro rata share of the UIM liability. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "The construction and application of insurance policy provisions to undisputed facts is a question of law, properly committed to the province of the trial judge

for a summary judgment determination." *Certain Underwriters at Lloyd's London v. Hogan*, 147 N.C. App. 715, 718, 556 S.E.2d 662, 664 (2001), *disc. review denied*, 356 N.C. 159, 568 S.E.2d 188 (2002).

Where more than one UIM insurance policy provides coverage, and "[w]here it is impossible to determine which policy provides primary coverage due to identical 'excess' clauses, 'the clauses are deemed mutually repugnant and neither . . . will be given effect.' " *Iodice v. Jones*, 133 N.C. App. 76, 78, 514 S.E.2d 291, 293 (1999) (quoting *N.C. Farm Bureau Mut. Ins. Co. v. Hilliard*, 90 N.C. App. 507, 511, 369 S.E.2d 386, 388 (1988)). If excess clauses are deemed mutually repugnant, "neither excess clause will be given effect, leaving the insured's claim to be pro rated between the separate policies according to their respective limits." *North Carolina Farm Bureau, Mut. Ins. Co. v. Bost*, 126 N.C. App. 42, 52, 483 S.E.2d 452, 458-59, *disc. review denied*, 347 N.C. 138, 492 S.E.2d 25 (1997).

In the present case, the excess clause in the GEICO policy provides, in pertinent part:

[I]f there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. *However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.*

(Emphasis added). The parties agree that the GEICO policy is primary under its excess clause. However, we must determine whether the parties' interpretation is correct. In a treatise on UIM insurance, the author interpreted the phrase "any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance" as follows:

The key language is the phrase "with respect to a vehicle you do not own." The word "you" again means the named insured and, if they live together, the named insured's spouse. In [*N.C.*] *Farm Bureau Mut. Ins. Co. v. Hilliard*, [90 N.C. App. 507, 369 S.E.2d 386 (1988),] *Bowser v. Williams*, [108 N.C. App. 8, 422 S.E.2d 355 (1992), *overruled on other grounds by McMillian v. N.C. Farm Bureau Mut. Ins. Co.*, 347 N.C. 560, 495 S.E.2d 352 (1998),] and *Isenhour v. Universal Underwriters Ins. Co.*, [341 N.C. 597, 461 S.E.2d 317, *reh'g denied*, 342 N.C. 197, 463 S.E.2d 237 (1995),] the Court of Appeals and the Supreme Court assumed without discussion that the "vehicle" to which the phrase refers is the vehicle in which the insured is riding at the time of the accident.

George L. Simpson, III, *North Carolina Uninsured and Underinsured Motorist Insurance: A Handbook* § 3:16, at 269 (2007). We note that GEICO's excess clause differentiates on the basis of whether the insured owns, or does not own, the vehicle in which the insured was riding at the time of the accident.

In the present case, Plaintiff was riding his bicycle at the time of the accident. Under North Carolina law, a bicycle is considered a vehicle when operated upon a highway. *See* N.C. Gen. Stat. § 20-4.01(49) (2005); *Lowe v. Futrell*, 271 N.C. 550, 554, 157 S.E.2d 92, 96 (1967) (stating that "[a] bicycle is a vehicle and its rider is a driver within the meaning of the Motor Vehicle Law."). Accordingly, when applied to this case, GEICO's excess clause reads: "[A]ny insurance [GEICO] provide[s] with respect to a [bicycle] [Plaintiff] do[es] not own shall be excess over any other collectible insurance." As a necessary corollary, any insurance GEICO provides with respect to a bicycle Plaintiff does own shall be primary. It follows that because Plaintiff owned the bicycle he was riding at the time of the accident, GEICO is primary under its excess clause.

The excess clause in the Harleysville policy reads:

[T]he following priority of policies applies and any amount available for payment shall be credited against such policies in the following order of priority:

First Priority[:] The policy applicable to the vehicle the "insured" was "occupying" at the time of the accident.

Second Priority[:] The policy applicable to a vehicle not involved in the accident under which the "insured" is a named insured.

Third Priority[:] The policy applicable to a vehicle not involved in the accident under which the "insured" is other than a named insured.

We interpret this policy under Virginia law because the policy was issued in Virginia. *See Erie Ins. Group v. Buckner*, 127 N.C. App. 405, 406, 489 S.E.2d 901, 903 (1997) (stating that "[t]he parties agree and we confirm that Virginia law governs our interpretation of the subject policy because Erie issued the policy in that State."). However, "North Carolina cases [are] instructive since North Carolina law is substantially similar to Virginia law concerning the legal standards determining coverage, exclusions and duties of defense." *Id.* at 407

n.1., 489 S.E.2d at 903 n.1. Like North Carolina law, Virginia law also provides that "when 'other insurance' clauses of two policies are of identical effect in that they operate mutually to reduce or eliminate the amount of collectible insurance available, neither provides primary coverage and . . . '[a] pro rata distribution . . . [is] appropriate.' " *Aetna Cas. & Sur. v. Nat. Union Fire Ins.*, 353 S.E.2d 894, 897 (Va. 1987) (quoting *State Capital Ins. Co. v. Mutual Assur. Soc.*, 241 S.E.2d 759, 762 (Va. 1978)).

Unlike the GEICO excess clause, the Harleysville policy does not differentiate between policies based upon ownership of the vehicle in which the insured was riding at the time of the accident. Rather, the Harleysville policy differentiates between the first priority on one hand, and the second and third priorities on the other, based upon whether the policy is applicable to (1) the vehicle involved in the accident or (2) a vehicle not involved in the accident. The Harleysville policy further differentiates between the second and third priorities depending upon whether the insured is a named insured or other than a named insured.

The Harleysville policy does not define the phrase "applicable to [the or a] vehicle." GEICO argues the phrase "applicable to [the or a] vehicle" is synonymous with "covering [the or a] vehicle." Under that interpretation, the vehicle referred to would be the vehicle listed as an insured vehicle under the policy. The bicycle is not listed as an insured vehicle under either policy. Therefore, the GEICO policy would have second priority because it is "[t]he policy [covering] a vehicle not involved in the accident [i.e., Plaintiff's 1987 Buick] under which [Plaintiff] is a named insured." GEICO further argues the Harleysville policy has third priority because it is "[t]he policy [covering] a vehicle not involved in the accident [i.e., Plaintiff's parents' vehicles] under which [Plaintiff] is other than a named insured." Under this interpretation, the GEICO policy would have higher priority and would therefore be primary under the Harleysville excess clause. Accordingly, the GEICO policy would be primary under both the GEICO and Harleysville policies, and the excess clauses would not be mutually repugnant.

However, Plaintiff argues the phrase "applicable to [the or a] vehicle" means "that can be applied to [the or a] vehicle." Pursuant to Plaintiff's interpretation, the Harleysville policy falls under first priority because it is "[t]he policy [that can be applied to] the [bicycle] [Plaintiff] was 'occupying' at the time of the accident." Plaintiff argues the Harleysville policy can be applied to Plaintiff's bicycle be-

cause the Harleysville policy provides coverage for "property damage" caused by an accident, and the policy further defines "property damage" as injury to or destruction of any tangible property. Therefore, Plaintiff argues, because Plaintiff's bicycle was tangible property damaged in the accident, and the bicycle was subject to coverage, the Harleysville policy "can be applied" to the bicycle and the Harleysville policy is entitled to first priority status. Plaintiff further argues that the GEICO policy also can "be applied to" the bicycle Plaintiff was riding at the time of the accident. Therefore, Plaintiff argues, because more than one policy provides coverage on the same level of priority, GEICO and Harleysville must share the UIM liability on a pro rata basis.

We agree with GEICO's interpretation of the phrase "applicable to [the or a] vehicle." The Harleysville policy uses the phrase "applicable to [the or a] vehicle" under each of the three priorities. However, under the first priority, the vehicle to which the policy applies is the one involved in the accident. Under the second and third priorities, the vehicle to which the policy applies is a vehicle not involved in the accident. To give a uniform interpretation to the phrase "applicable to [the or a] vehicle," we hold that the phrase "[t]he policy applicable to [the or a] vehicle" refers to the policy under which the vehicle is listed as an insured vehicle. In other words, the phrase "applicable to [the or a] vehicle" means "covering [the or a] vehicle." This is necessary because under Plaintiff's interpretation of the phrase "applicable to [the or a] vehicle," any policy covering property damage under which a party is insured would be a first priority policy. If, for example, Plaintiff had lived with family members who also had UIM insurance covering property damage under which Plaintiff could claim coverage, those policies could also claim first priority status because they could be applied to the bicycle Plaintiff was occupying at the time of the accident. Furthermore, under Plaintiff's interpretation of the phrase "applicable to [the or a] vehicle," the Harleysville policy would fall under multiple priority levels. In addition to the Harleysville policy having first priority, it would also have third priority because it is "[t]he policy that [can be applied to] a vehicle not involved in the accident[,] [being Plaintiff's parents' vehicles,] under which [Plaintiff] is other than a named insured." Such a construction is unreasonable and irrational.

Our decision is supported by *Dairyland Ins. Co. v. Sylva*, 409 S.E.2d 127 (Va. 1991), where a vehicle driven by Matthew Rockstroh (Rockstroh) struck and injured the plaintiff while the plaintiff was

operating his motorcycle. *Id.* at 128. Allstate Insurance Company (Allstate) insured Rockstroh in the amount of $25,000.00 against liability for bodily injury. *Id.* Dairyland Insurance Company (Dairyland) provided $25,000.00 of uninsured motorist (UM) and UIM coverage to the plaintiff "while operating his motorcycle." *Id.* Allstate also provided $25,000.00 in UM and UIM coverage to the plaintiff as a named insured in a policy issued to the plaintiff's wife. *Id.*

The parties tentatively agreed to settle the plaintiff's claim for $50,000.00, but could not agree whether Allstate or Dairyland would· be entitled to offset the $25,000.00 in liability insurance. *Id.* The plaintiff filed a complaint against Allstate and Dairyland, seeking a determination of the priority of the two policies. *Id.* at 128-29.

The trial court held that Dairyland was primarily responsible for paying the plaintiff's UIM claim. *Id.* at 129. The Virginia Supreme Court interpreted the pertinent Virginia statute:

> "If an injured person is entitled to underinsured motorist coverage under more than one policy, the following order of priority of policies applies and any amount available for payment shall be credited against such policies in the following order of priority:
>
> 1. The policy covering a motor vehicle occupied by the injured person at the time of the accident;
>
> 2. The policy covering a motor vehicle not involved in the accident under which the injured person is a named insured;
>
> 3. The policy covering a motor vehicle not involved in the accident under which the injured person is an insured other than a named insured.
>
> Where there is more than one insurer providing coverage under one of the payment priorities set forth, their liability shall be proportioned as to their respective underinsured motorist coverages."

*Id.* (emphasis omitted) (quoting Va. Code Ann. § 38.2-2206(B)). The Virginia Supreme Court held that "Dairyland's policy covered the motorcycle 'occupied' (ridden) by [the plaintiff] and, under a literal reading of the statute, Dairyland would thus be entitled to priority in the credit for Rockstroh's liability coverage." *Id.* Accordingly, Dairyland was entitled to a complete offset of its $25,000.00 in UIM coverage. *Id.* at 130.

Pursuant to *Dairyland*, the policy covering the vehicle is the policy under which that vehicle is listed as an insured vehicle. In the present case, Plaintiff argues that *Dairyland* is inapposite because the Virginia Supreme Court was interpreting the statutory language, which is more narrow than the language used in the Harleysville policy. Plaintiff argues "the Harleysville policy provides broader coverage to Plaintiff than he would be entitled to receive under the statutory code." However, as we have already determined, the only reasonable interpretation of the Harleysville policy requires us to interpret the phrase "applicable to [the or a] vehicle" as "covering [the or a] vehicle." Accordingly, because *Dairyland* interprets the Virginia statutory language, *Dairyland* is persuasive.

In the case before us, under this interpretation, the GEICO policy has second priority under the Harleysville policy's excess clause. The GEICO policy lists Plaintiff's 1987 Buick as the insured vehicle. The 1987 Buick was not involved in the accident and Plaintiff is a named insured under the GEICO policy. Therefore, the GEICO policy is "[t]he policy·applicable to a vehicle not involved in the accident [i.e., Plaintiff's 1987 Buick] under which [Plaintiff] is a named insured." The Harleysville policy has third priority. The Harleysville policy lists two vehicles as insured vehicles, neither of which was involved in the accident. Moreover, Plaintiff is "other than a named insured" under the Harleysville policy because he is a family member of the named insureds. Therefore, the Harleysville policy is "[t]he policy applicable to a vehicle not involved in the accident [i.e., Plaintiff's parents' vehicles] under which [Plaintiff] is other than a named insured." Under the Harleysville excess clause, the GEICO policy has higher priority than the Harleysville policy and the GEICO policy is therefore primary.

Because the GEICO policy is primary under both the GEICO and Harleysville excess clauses, the excess insurance clauses are not mutually repugnant. Rather, they can be read harmoniously as determining that GEICO provides primary UIM coverage in this case. " '[T]he primary provider of UIM coverage . . . is entitled to the credit for the liability coverage. The excess UIM coverage providers still get the benefit of the credit for the coverage because their UIM coverage does not apply until the liability coverage and the primary UIM coverage are exhausted.' " *Iodice*, 133 N.C. App. at 79, 514 S.E.2d at 293 (quoting *Falls v. N.C. Farm Bureau Mut. Ins. Co.*, 114 N.C. App. 203, 208, 441 S.E.2d 583, 586, *disc. review denied*, 337 N.C. 691, 448 S.E.2d 521 (1994)).

Accordingly, GEICO is entitled to set off the entire $100,000.00 of liability insurance provided by Nationwide against any UIM amount GEICO owes. Because GEICO's limit of UIM coverage is $100,000.00, GEICO is entitled to a full offset of its UIM coverage. Therefore, Plaintiff must seek the remainder of his UIM coverage from Harleysville. We reverse the trial court and remand with instructions to enter judgment in favor of GEICO.

Reversed and remanded.

Judges BRYANT and STEELMAN concur.