INTEGON NATIONAL INSURANCE COMPANY, Plaintiff v. KELLEY PHILLIPS, TAMMY PHILLIPS, TARRAH KASEY JONES, HAILEE JONES, by and through her Guardian Ad Litem, ANDREW FINK, DONALD BURRELL PRESSLEY, and NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC., Defendants

No. COA10-1185

(Filed 21 June 2011)

**Insurance— motor vehicles—identical excess clauses**

The trial court erred in a declaratory judgment action arising out of a motor vehicle accident by granting summary judgment in favor of plaintiff insurance company. Defendant insurance company's policy did not provide primary coverage for the personal injury claim, but instead, the claim was prorated between the two insurers according to the limits specified in the policies because the "excess" clauses of both companies were identically worded and deemed mutually repugnant.

Appeal by defendant from order entered 8 June 2010 by Judge Mark E. Klass in Union County Superior Court. Heard in the Court of Appeals 8 March 2011.

*Bennett & Guthrie, P.L.L.C., by Rodney A. Guthrie and Roberta B. King, for plaintiff-appellee Integon National Insurance Company.*

*McAngus, Goudelock & Courie, P.L.L.C., by John T. Jeffries and James D. McAlister, for defendant-appellant North Carolina Farm Bureau Mutual Insurance Company, Inc.*

*Fink & Hayes, P.L.L.C., by Andrew Fink, for Andrew Fink, guardian ad litem for defendant-appellee Hailee Jones.*

HUNTER, Robert C., Judge.

Defendant North Carolina Farm Bureau Mutual Insurance Company, Inc. appeals from the trial court's entry of summary judgment in favor of plaintiff Integon National Insurance Company.[1] After careful review, we reverse.

## Facts

This case arises out of a motor vehicle accident occurring on 8 January 2007, in Monroe, North Carolina. At the time of the accident, Tarrah Kasey Jones was driving a 2006 Chevrolet vehicle, with her sister, Hailee Jones, in the passenger seat. The Jones vehicle collided with a 2005 Mercury automobile, driven by Donald Burrell Pressley, in which Mr. Pressley's wife, Carolyn Pressley, was a passenger. As a result of the accident, Mrs. Pressley sustained fatal injuries; Mr. Pressley and Hailee Jones were also injured. It is undisputed that Tarrah Jones' negligence proximately caused the auto accident and the resulting injuries.

At the time of the accident, there were two automobile liability insurance policies providing coverage. Farm Bureau issued a policy to Tammy Phillips, Tarrah and Hailee Jones' mother, carrying bodily injury coverage of $100,000 per person and $300,000 per accident. Tarrah Jones was listed as an additional driver on Mrs. Phillips' policy. The only vehicle listed on Mrs. Phillips' policy was a 2005 Honda Civic. The other policy in effect at the time of the accident was issued by Integon to Kelley Phillips, Tarrah and Hailee Jones' stepfather. This policy carried bodily injury coverage limits of $50,000 per person and $100,000 per accident. The Integon policy listed a 1999 Buick Century as the only covered vehicle and the only drivers listed on the policy were Mr. and Mrs. Phillips.

The 2006 Chevrolet being driven by Tarrah Jones on 8 January 2007 was a rental car owned by Hertz Vehicles, Inc. Mrs. Phillips had rented the car while the listed 2005 Honda Civic was out for repairs.

Claims for personal injury were filed by Hailee Jones and Mr. Pressley, as well as a wrongful death claim by the estate of Mrs. Pressley. The wrongful death claim was settled, with Farm Bureau contributing its per person limit of $100,000 and Integon paying its per person limit of $50,000. Mr. Pressley also filed a claim to recover for his personal injuries stemming from the 8 January 2007 accident.

---

1. We note that defendants Donald Burrell Pressley, Kelley Phillips, Tammy Phillips, Tarrah Kasey Jones, and Hailee Jones, through her guardian *ad litem*, Andrew Fink, joined with Integon ("appellees") in filing a "joint appellees'" brief with this Court.

Mr. Pressley's claim was settled for $50,000: Farm Bureau paid $33,000 and Integon paid $16,667. As a result of these settlements, Integon has paid $66,667, leaving $33,333 on its per accident coverage to be applied toward the settlement of Hailee Jones' claim; Farm Bureau has paid $133,333, leaving more than its $100,000 per person coverage limit.

The Integon policy issued to Mr. Phillips and the Farm Bureau policy issued to Mrs. Phillips contain identical "Other Insurance" clauses:

If there is other applicable liability insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, *any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.*

(Emphasis added.)

Integon filed a declaratory judgment action on 24 August 2009, seeking a declaration that "the automobile insurance policy issued by [Integon] to Kelley Phillips as named insured provides excess coverage over the primary coverage provided under the automobile insurance policy issued by [Farm Bureau] to Tammy Phillips as named insured for any claims arising from the [8 January 2007] accident[.]" Both Integon and Farm Bureau filed motions for summary judgment in March 2010. After conducting a hearing on 19 April 2010 on the parties' cross-motions, the trial court entered an order on 8 June 2010 granting Integon's motion for summary judgment and, consequently, denying Farm Bureau's motion. Farm Bureau timely appealed to this Court.

## Discussion

In this case, there is no dispute regarding the relevant facts. The sole issue is the proper interpretation of the personal automobile insurance policies issued by Integon and Farm Bureau. The interpretation and application of insurance policy provisions to undisputed facts is a question of law, appropriately resolved on summary judgment. *McGuire v. Draughon*, 170 N.C. App. 422, 424 25, 612 S.E.2d 428, 430 (2005); *Certain Underwriters at Lloyd's London v. Hogan*, 147 N.C. App. 715, 718, 556 S.E.2d 662, 664 (2001), *disc. review denied*, 356 N.C. 159, 568 S.E.2d 188 (2002).

It is well established that "[a]n insurance policy is a contract to be construed under the rules of law applicable to other written con-

tracts." *Chavis v. Southern Life Ins. Co.*, 76 N.C. App. 481, 484, 333 S.E.2d 559, 561 (1985), *aff'd*, 318 N.C. 259, 347 S.E.2d 425 (1986). "As with all contracts, the object of construing an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9, 692 S.E.2d 605, 612 (2010) (citation and internal quotation marks omitted). As the language of the policy "is the clearest indicator of the parties' intentions[,]" *Metropolitan Prop. and Casualty Ins. Co. v. Lindquist*, 120 N.C. App. 847, 851, 463 S.E.2d 574, 576 (1995), where the policy is unambiguous, "[i]t must be presumed the parties intended what the language used clearly expresses, and the [policy] must be construed to mean what on its face it purports to mean[,]" *Hartford Acc. & Indemnity Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946) (internal citations omitted). "[I]t is the duty of the court to construe an insurance policy as it is written, not to rewrite it and thus make a new contract for the parties." *Allstate Ins. Co. v. Shelby Mut. Ins. Co.*, 269 N.C. 341, 346, 152 S.E.2d 436, 440 (1967).

With respect to the policy's terms, our Supreme Court has explained:

> "Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect."

*Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299-300, 524 S.E.2d 558, 563 (2000) (quoting *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978)).

Under the "Insuring Agreement" of the policies' liability coverage provisions, both Farm Bureau and Integon agree to "pay damages for *bodily injury or property damage* for which any *insured* becomes legally responsible because of an auto accident."[2] For purposes of liability coverage, an "insured" is defined, in pertinent part, as:

> 1. You or any *family member* for the ownership, maintenance or use of any auto or *trailer*.

---

2. The Farm Bureau and Integon insurance policies are identical in all material respects. Unless specified otherwise, all quotations in this opinion reflect the language of both policies.

2. Any person using *your covered auto.*

Both Farm Bureau and Integon agreed at summary judgment, as well as now on appeal, that, under these terms, both policies provide liability coverage for the 8 January 2007 auto accident. The focus of the parties' dispute is their relative obligations under each policy in light of the policies' identically worded "Other Insurance" provisions:

> If there is other applicable liability insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, *any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.*

(Emphasis added.) *See generally Aetna Casualty and Surety Co. v. Continental Ins. Co.*, 110 N.C. App. 278, 282, 429 S.E.2d 406, 409 (1993) ("An excess clause in an insurance policy 'generally provides that if other valid and collectible insurance covers the occurrence in question, the "excess" policy will provide coverage only for liability above the maximum coverage of the primary policy or policies.' " (quoting *Horace Mann Ins. Co. v. Continental Casualty Co.*, 54 N.C. App. 551, 555, 284 S.E.2d 211, 213 (1981))).

In construing "excess" clauses, this Court has explained that "[w]here it is impossible to determine which policy provides primary coverage due to identical 'excess' clauses, 'the clauses are deemed mutually repugnant and neither . . . will be given effect.' " *Iodice v. Jones*, 133 N.C. App. 76, 78, 514 S.E.2d 291, 293 (1999) (quoting N.C. *Farm Bureau Mut. Ins. Co. v. Hilliard*, 90 N.C. App. 507, 511, 369 S.E.2d 386, 388 (1988)). Where "excess" clauses are not given effect due to mutual repugnancy, the claim is "prorated between the two insurers according to their respective policy limits." *Hilliard*, 90 N.C. App. at 511, 369 S.E.2d at 389; *accord Hlasnick v. Federated Mut. Ins. Co.*, 136 N.C. App. 320, 330, 524 S.E.2d 386, 393 ("Where . . . the 'other insurance' clauses in the policies are mutually repugnant, the claims will be prorated."), *aff'd in part and disc. review improvidently allowed in part*, 353 N.C. 240, 539 S.E.2d 274 (2000). Thus, in this case, "if the identically worded 'excess' clauses in the [Farm Bureau] and [Integon] policies prevent a determination of which policy provides primary [liability] coverage, a *pro rata* allocation of [liability] coverage . . . is appropriate." *Iodice*, 133 N.C. App. at 78, 514 S.E.2d at 293.

In making the primary-excess coverage determination, the operative language in the "excess" clause is the phrase "vehicle you do not own." *See Sitzman v. Government Employees Ins. Co.*, 182 N.C. App.

259, 262, 641 S.E.2d 838, 841 (2007) (explaining that in construing "other insurance" provisions, "[t]he key language is the phrase 'with respect to a vehicle you do not own' "). The policies define the term "you" as:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

As Mrs. Phillips is the named insured on the Farm Bureau policy and Mr. Phillips is the named insured on the Integon policy, and each is the resident spouse of the other, they are the "you[s]" referred to in the "excess" clauses. *See id.* ("The word 'you' . . . means the named insured and, if they live together, the named insured's spouse.").

The policies also provide identical definitions for an "owned" vehicle:

For the purpose of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

In addition to the policies' definition, N.C. Gen. Stat. § 20-4.01(26) (2009) provides that a vehicle is owned by the "person holding the legal title to a vehicle . . . ." *See also Gaddy v. State Farm Mut. Auto. Ins. Co.*, 32 N.C. App. 714, 716, 233 S.E.2d 613, 614 (1977) ("Under North Carolina law, an automobile is not 'owned' within the meaning of an automobile liability insurance policy until the transferee obtains from the transferor a properly executed certificate assigning and warranting title.").

It is undisputed in this case that Hertz, the rental agency from which Mrs. Phillips rented the 2006 Chevrolet, holds legal title to the vehicle and that neither Mr. Phillips nor Mrs. Phillips have any ownership interest in the rental car. Thus, according to the plain language of the Farm Bureau and Integon policies, the rental car is not an "own[ed]" vehicle for purposes of the "excess" clauses. *See Strickland v. State Farm Mut. Auto. Ins. Co.*, 133 N.C. App. 71, 75, 514 S.E.2d 304, 305 (1999) (rejecting argument, for purposes of applying an exclusion from liability coverage, that "since the rental car was a substitute for an owned vehicle, it must be considered owned by [the insured]").

Appellees nonetheless contend that the Farm Bureau policy provides primary coverage because the Hertz rental car "was a tempo-

rary substitute for the 2005 Honda, making the Hertz rental vehicle a 'covered auto' under the Farm Bureau policy." Appellees misinterpret the policies. There does not appear to be any dispute that the Hertz rental car was a "temporary substitute" for Mrs. Phillips' listed 2005 Honda Civic and thus qualifies as a "covered auto" under the Farm Bureau policy, which defines a "covered auto," in pertinent part, as:

> Any auto or trailer not owned by you while used as a *temporary substitute* for any other vehicle described in this definition which is out of normal use because of its:
>
> a. breakdown;
>
> b. *repair*;
>
> c. servicing;
>
> d. loss; or
>
> e. destruction.

(Second and third emphasis added.) Indeed, Farm Bureau, in its appellate brief, concedes that "Mrs. Phillips rented th[e] [2006 Chevrolet] to temporarily replace the 2005 Honda Civic vehicle covered under the Farm Bureau policy, as that vehicle was out of use due to repair." Farm Bureau's policy's "excess" clause, however, does not differentiate between primary and excess coverage based on whether the vehicle at issue is a "covered auto," but, rather, whether the vehicle is "own[ed]" by the named insured or his or her resident spouse. *See Sitzman*, 182 N.C. App. at 263, 641 S.E.2d at 841 (noting, in construing "excess" clause identical to the clauses in this case that the insurer's "excess clause differentiates on the basis of whether the insured owns, or does not own, the vehicle"). Thus the determinative factor under these policies is ownership of the vehicle, not its status as a covered auto.

As neither Mr. Phillips nor Mrs. Phillips owned the Hertz rental car, the Farm Bureau policy provides excess liability coverage with respect to Hailee Jones' personal injury claim. Similarly, under the terms of Integon's identically worded "excess" clause, it purports to provide primary coverage. Nevertheless, relying on this Court's holding in *Iodice*, appellees argue that identical "excess" clauses "are not always mutually repugnant." In *Iodice*, 133 N.C. App. at 78, 514 S.E.2d at 293, this Court held that "identically worded" excess clauses were not mutually repugnant because they "d[id] not have identical meanings . . . ." In reaching this conclusion, the *Iodice* Court reasoned:

Because "you" is expressly defined as the named insured and spouse, the Nationwide "excess" clause reads: "[A]ny insurance we provide with respect to a vehicle [Penney] do[es] not own shall be excess over any other collectible insurance." It follows that Nationwide's UIM coverage is not "excess" over other collectible insurance (and is, therefore, primary), because the vehicle in which the accident occurred is owned by Penney. The GEICO "excess" clause reads: "[A]ny insurance we provide with respect to a vehicle [Iodice's mother] do[es] not own shall be excess over any other collectible insurance." It follows that GEICO's UIM coverage is "excess" (and is, therefore, secondary), because the vehicle in which the accident occurred is not owned by Iodice's mother. Accordingly, Nationwide provides primary UIM coverage in this case.

*Id.* at 78-79, 514 S.E.2d at 293.

Here, in contrast to *Iodice*, the Farm Bureau and Integon policies have "identical meanings." As the "you" referenced in the policies is defined as the named insured or his or her resident spouse, the Farm Bureau excess clause reads: "[A]ny insurance we provide for a vehicle [Mrs. Phillips or her spouse, Mr. Phillips,] do not own shall be excess over any other collectible insurance." Similarly, the Integon excess clause provides: "[A]ny insurance we provide for a vehicle [Mr. Phillips or his spouse, Mrs. Phillips,] do not own shall be excess over any other collectible insurance." Since neither Mr. Phillips nor Mrs. Phillips owned the Hertz rental car, the Farm Bureau and Integon policies, unlike the policies at issue in *Iodice*, have identical meanings when applied to the facts in this case.

Due to the "excess" clauses being identically worded, it is "impossible . . . to determine which policy is primary," and thus the "excess" clauses must be deemed mutually repugnant, with neither clause being given effect. *Aetna Cas. and Surety Co.*, 110 N.C. App. at 282, 429 S.E.2d at 409; *accord Alliance Mutual Ins. Co. v. N.Y. Central Ins. Co.*, 70 N.C. App. 140, 142, 318 S.E.2d 524, 525 (1984) ("Where, as here, the excess insurance clauses are identical in language, we do not see how we can hold the coverage of either company is primary or excess."). As a result, the claim must be "prorated between the two insurers according to their respective policy limits." *Hilliard*, 90 N.C. App. at 511, 369 S.E.2d at 389; *see N.C. Farm Bureau Mut. Ins. Co. v. Bost*, 126 N.C. App. 42, 52, 483 S.E.2d 452, 459 ("Both policies have 'Other Insurance' provisions which are identical, and therefore, the provisions nullify each other, leaving Farm Bureau and defendant

Allstate to share the Ezzelle settlement on a pro rata basis."), *disc. review denied*, 347 N.C. 138, 492 S.E.2d 25 (1997); *Onley v. Nationwide Mutual Ins. Co.*, 118 N.C. App. 686, 690, 456 S.E.2d 882, 884 (holding identical "excess" clauses were "mutually repugnant" and thus neither could be given effect with regard to UIM benefits; both policies stated that coverage provided with respect to vehicle not owned by insured was excess over any other collectible insurance), *disc. review denied*, 341 N.C. 651, 462 S.E.2d 514 (1995); *Alliance Mutual Ins. Co.*, 70 N.C. App. at 142, 318 S.E.2d at 525 ("When . . . neither policy is primary or excess, we must hold that the ["excess"] clauses are mutually repugnant and the coverage must be prorated.").

Appellees further argue that the "purpose behind North Carolina's Financial Responsibility Act—to compensate innocent victims"—is "best served if this Court upholds the ruling of the Trial Court." The Motor Vehicle Safety and Financial Responsibility Act ("FRA"), N.C. Gen. Stat. §§ 20-279.1 through -279.39 (2009), "is remedial in nature and is 'to be liberally construed'" in order to accomplish its "'avowed purpose'" of "'compensate[ing] the innocent victims of financially irresponsible motorists.'" *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 573, 573 S.E.2d 118, 120 (2002) (quoting *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763 (1989)). This goal, our Supreme Court has explained, "is best served when the statute is interpreted to provide the innocent victim with the fullest possible protection." *Proctor v. N.C. Farm Bureau Mutual Ins. Co.*, 324 N.C. 221, 225, 376 S.E.2d 761, 764 (1989). Thus, to effectuate FRA's purpose, "when the terms of [a] policy conflict with the statute, the provisions of the statute will prevail." *Wilson v. State Farm Mut. Auto. Ins. Co.*, 327 N.C. 419, 424, 394 S.E.2d 807, 810 (1990).

Appellees, however, do not suggest that any provisions of the policies at issue here are in conflict with the FRA—indeed, in all material respects, the Farm Bureau and Integon policies are identical and have been approved by the North Carolina Rate Bureau. Rather, appellees simply contend that any holding reversing the trial court is inconsistent with the purpose of the FRA because "[a] finding that the Farm Bureau policy is primary and the Integon policy excess provides a more complete recovery for Hailee Jones." While we certainly sympathize with appellees' position, the policies do not conflict with the provisions of the FRA, and this Court is not free to rewrite the parties' policies. *Allstate Ins. Co.*, 269 N.C. at 346, 152 S.E.2d at 440.

Although the trial court did not explicitly conclude that Farm Bureau's policy provided primary liability coverage over Integon's

excess coverage, that determination is implicit in the trial court's granting Integon's motion for summary judgment. As Farm Bureau's policy does not provide primary coverage for Hailee Jones' personal injury claim, but, rather, the claim must be prorated according to the limits specified in the policies, the trial court erred in granting summary judgment in favor of Integon. Accordingly, we are bound to reverse the trial court's summary judgment order.

Reversed.

Judges STEPHENS and ERVIN concur.