MEDFORD L. AUSTIN, ADMINISTRATOR OF THE ESTATE OF MEDFORD JEROME AUSTIN, DECEASED, PLAINTIFF V. RICHARD AARON MIDGETT AND THEODORE STOCKTON MIDGETT, JR., DEFENDANTS

No. COA02-1127

(Filed 5 August 2003)

### 1. Insurance— Automobile—UIM coverage—prejudgment interest

Although the trial court erred in a wrongful death action seeking the recovery of UIM benefits by failing to award prejudgment interest on the judgment against defendant insurance company when the pertinent policy did not expressly exclude prejudgment interest from compensatory damages as it did with costs in the supplementary payments provision, defendant's liability limit is $75,000, the $100,000 UIM policy limit less a credit for $25,000 paid by the tortfeasor's liability carrier to plaintiff, and it cannot be required to pay prejudgment interest that would raise the amount it paid above its $75,000 liability limit.

### 2. Insurance— Automobile—UIM coverage—credit for workers' compensation payments

The trial court erred in a wrongful death action seeking the recovery of UIM benefits by denying defendant insurance company a credit for workers' compensation payments received by plaintiff, and defendant is only required to pay its share of the loss without exhausting payment of its UIM coverage before another insurance company would be required to pay on its coverage, because: (1) the current version of N.C.G.S. § 20-279.21(e) requires the UIM carrier to pay both the amount of the workers' compensation lien as determined under N.C.G.S. § 97-10.2 and the loss uncompensated by workers' compensation payments; (2) the current version of N.C.G.S. § 20-279.21(e) preserves a credit to the UIM carrier for workers' compensation benefits which are not subject to an employer's lien; and (3) defendant's policy contained the language that it would pay only its share of the loss which is the proportion that its limit of liability bears to the total of all applicable limits.

Appeals by plaintiff and unnamed defendant Integon National Insurance Company from judgment entered 21 March 2002 by Judge J. Richard Parker in Dare County Superior Court. Heard in the Court of Appeals 14 May 2003.

**AUSTIN v. MIDGETT**

[159 N.C. App. 416 (2003)]

*Johnny S. Gaskins, for plaintiff-appellee.*

*Bennett, Guthrie & Dean, P.L.L.C., by Rodney A. Guthrie and Stanley P. Dean, for unnamed defendant-appellant, Integon National Insurance Company.*

STEELMAN, Judge.

The deceased, Medford Jerome Austin ("Austin"), died on 25 October 2000 when he was struck by a vehicle operated by defendant Richard Aaron Midgett ("Midgett"). At the time of the accident, Austin was acting in the course and scope of his employment with the North Carolina Department of Transportation ("DOT").

Midgett had liability insurance coverage with North Carolina Farm Bureau Mutual Insurance Company ("Farm Bureau") which was in effect on the date of the accident. The limit of liability insurance coverage under this policy was $50,000.00 per person.

At the time of the accident, Austin had underinsured motorist ("UIM") insurance coverage with Integon National Insurance Company ("Integon"), an unnamed defendant in this matter. Austin's Integon policy had been renewed on 14 June 2000 and was effective through 14 December 2000. Austin also had UIM insurance coverage through a policy issued to his father, Medford L. Austin, by State Farm Mutual Automobile Insurance Company ("State Farm"), another unnamed defendant in this matter. Each UIM policy had a liability limit of $100,000.00.

Plaintiff filed a complaint seeking compensation for Austin's wrongful death against Midgett and his father, defendant Theodore Stockton Midgett, Jr., owner of the vehicle Midgett was driving. The parties entered a stipulation of facts to allow the trial court to determine the amount available to plaintiff under the UIM policies. The parties stipulated that Midgett's negligence was the sole proximate cause of the accident and resulting death of Austin. They further stipulated that the damages sustained by plaintiff exceeded $200,000.00.

Austin's employer, DOT, paid plaintiff workers' compensation benefits in the amount of $100,278.98. DOT asserted a lien in this amount against any third party recovery, including any proceeds plaintiff received from the UIM policies. Plaintiff filed a motion to extinguish this lien pursuant to N.C. Gen. Stat. § 97-10.2(j) (2001). Plaintiff and DOT subsequently entered a compromise agreement

under which DOT would accept $33,426.00 in full and complete satisfaction of its workers' compensation lien.

Pursuant to the agreement between plaintiff and DOT and its authority under N.C. Gen. Stat. § 97-10.2(j), the trial court entered an order reducing the workers' compensation lien to $33,426.00 in full and complete satisfaction of the original lien of $100,278.98. However, this order was to be "null and void if the plaintiff, for any reason, does not receive a total recovery of two hundred thousand dollars ($200,000.00) from both the liability insurance carrier and the underinsured motorist carriers. . . ."

Plaintiff accepted payment from Farm Bureau in the amount of $50,000.00, thereby exhausting the amount of recovery under Midgett's liability insurance coverage. The sum tendered by Farm Bureau was credited against any amounts paid to plaintiff by Integon and State Farm. Integon and State Farm agreed to divide the credit equally, with each receiving a credit of $25,000.00.

Plaintiff and both unnamed defendants, Integon and State Farm, filed motions for summary judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 56 (2001) on the issue of the credits due to Integon and State Farm for liability insurance benefits and workers' compensation payments received by plaintiff. The trial court granted plaintiff's summary judgment motion and denied both motions for summary judgment of Integon and State Farm.

The trial court entered a $200,000.00 judgment against Integon and State Farm and ordered each to pay plaintiff $75,000.00, which represented the $100,000.00 liability limit in each policy less the $25,000.00 credit each carrier received for Farm Bureau's liability insurance payment to plaintiff. The order denied both UIM carriers a credit for any portion of the workers' compensation paid to plaintiff by DOT.

Plaintiff requested the trial court award prejudgment interest on the judgment against Integon and State Farm. The trial court awarded only post-judgment interest to plaintiff.

Plaintiff and Integon appeal the trial court's judgment. State Farm paid its judgment to plaintiff and is not a party to this appeal.

I.

[1] Plaintiff assigns as error the trial court's failure to award prejudgment interest on the judgment against Integon. Specifically,

AUSTIN v. MIDGETT

[159 N.C. App. 416 (2003)]

plaintiff contends that pursuant to the terms of the policy, Integon is obligated to pay prejudgment interest as compensatory damages up to the UIM policy limit of $100,000.00.

N.C. Gen. Stat. § 24-5(b) (2001) provides:

In an action other than contract, any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied. Any other portion of a money judgment in an action other than contract, except the costs, bears interest from the date of entry of judgment until the judgment is satisfied.

Our Supreme Court has held that prejudgment interest up to the amount of the carrier's liability limit is part of compensatory damages for which the UIM carrier is liable. *Baxley v. Nationwide Mut. Ins. Co.*, 334 N.C. 1, 430 S.E.2d 895 (1993), *appeal after remand*, 115 N.C. App. 718, 446 S.E.2d 597 (1994).

The Integon policy states that with regard to UIM coverage, "[Integon] will also pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because o[f] bodily injury sustained by an insured and caused by an accident." The supplementary payments section of the Integon policy further states that in addition to the limit of liability, Integon will pay on behalf of the insured "[a]ll costs taxed against the insured and interest accruing after a judgment is entered in any suit we defend. Costs do not include prejudgment interest."

The Integon policy did not expressly exclude prejudgment interest from compensatory damages, as it did with costs in the supplementary payments provision. Under *Baxley*, prejudgment interest is part of compensatory damages up to the liability limit. Thus, we hold that Integon is obligated to pay prejudgment interest on the amount owed to plaintiff up to its liability limit.

We disagree, however, with plaintiff's contention that Integon's limit of liability is $100,000.00. According to the trial court's order, Integon received a $25,000.00 credit against its UIM liability limit for the liability insurance proceeds paid by Farm Bureau to plaintiff. Therefore, Integon's liability limit is $75,000.00, the $100,000.00 listed limit less the $25,000.00 credit, and it cannot be required to pay prejudgment interest over this amount. *See Baxley v. Nationwide Mut.*

*Ins. Co.*, 115 N.C. App. 718, 446 S.E.2d 597 (1994) (holding that the UIM carrier's limit of liability was $75,000.00, representing the difference between the policy's listed liability limit of $100,000.00 and a $25,000.00 credit for liability insurance proceeds, and could not be required to pay prejudgment interest when it had paid the insured a total of $75,000.00 for damages).

## II.

[2] Integon argues the trial court erred in denying it a credit for workers' compensation payments received by plaintiff. It contends the trial court misinterpreted the current version of N.C. Gen. Stat. § 20-279.21(e) to preclude a credit to Integon for workers' compensation benefits received by plaintiff.

### A. Background

Provisions of the Financial Responsibility Act ("Act"), N.C. Gen. Stat. Chapter 20, Article 9A (2001), are written into every insurance policy as a matter of law. *Wilmoth v. State Farm Mut. Auto. Ins. Co.*, 127 N.C. App. 260, 488 S.E.2d 628, *disc. review denied*, 347 N.C. 410, 494 S.E.2d 601 (1997). Where the language of an insurance policy conflicts with the provisions of the Act, the provisions of the Act prevail. *Baxley*, 334 N.C. at 6, 430 S.E.2d at 898.

Prior to 1999, N.C. Gen. Stat. § 20-279.21(e) provided that a UIM policy "need not insure against loss from any liability for which benefits are in whole or in part either payable or required to be provided under any workers' compensation law. . . ." Under this version of the statute, our Supreme Court held in *McMillian v. North Carolina Farm Bureau Mut. Ins. Co.*, 347 N.C. 560, 495 S.E.2d 352 (1998), that a UIM carrier was entitled to reduce its liability by the amount of the workers' compensation benefits received by the employee even though the employee also was required to reimburse the workers' compensation lien under N.C. Gen. Stat. § 97-10.2. This resulted in a double penalty against the employee.

N.C. Gen. Stat. § 20-279.21(e) was amended by the General Assembly in 1999 through legislation entitled "[a]n act to clarify that liability, uninsured, and underinsured coverage is not reduced by receipt of subrogated Workers' Compensation benefits." The current version of N.C. Gen. Stat. § 20-279.21(e) (2001) provides:

Uninsured or underinsured motorist coverage that is provided as part of a motor vehicle liability policy *shall insure that portion*

AUSTIN v. MIDGETT

[159 N.C. App. 416 (2003)]

*of a loss uncompensated by any workers' compensation law and the amount of an employer's lien determined pursuant to G.S. 97-10.2(h) or (j). In no event shall this subsection be construed to* require that coverage exceed the applicable uninsured or underinsured coverage limits of the motor vehicle policy or *allow a recovery for damages already paid by workers' compensation.*

(emphasis added). The amendment, effective for policies issued or renewed on or after 1 October 1999, requires UIM carriers to insure the amount of the employer's workers' compensation lien on UIM proceeds received by the employee in addition to the damages uncompensated by workers' compensation benefits. *See* George L. Simpson, III, *North Carolina Uninsured and Underinsured Motorist Insurance, 2002 Edition: A Handbook,* 68 (2002). Since the employee still must reimburse the employer for the workers' compensation lien from the amount received from both liability and UIM insurance proceeds pursuant to N.C. Gen. Stat. § 97-10.2, this amendment eliminates the double penalty to the employee which resulted from the *McMillian* decision while also preventing double recovery by the employee.

The amendment provides that the statute may not be construed to "allow a recovery for damages already paid by workers' compensation." Thus, the current version of N.C. Gen. Stat. § 20-279.21(e) preserves a credit to the UIM carrier for workers' compensation benefits which are not subject to an employer's lien.

### B. Application

The UIM coverage section of Austin's Integon policy states that "[a]ny amount otherwise payable for damages under this coverage shall be reduced by all sums . . . [p]aid or payable because of the bodily injury under any of the following or any similar law: a. workers' compensation law. . . ." This policy language establishing a credit under any circumstances for *all* sums paid pursuant to workers' compensation law conflicts with the current version of N.C. Gen. Stat. § 20-279.21(e), which is applicable to the Integon policy renewed in June 2000. Therefore, the statute controls in this case.

As we have explained, N.C. Gen. Stat. § 20-279.21(e) requires the UIM carrier to pay both the amount of the workers' compensation lien as determined under N.C. Gen. Stat. § 97-10.2 and the loss uncompensated by workers' compensation payments. In the instant

case, Integon and State Farm would be liable for the workers' compensation lien determined under N.C. Gen. Stat. § 97-10.2(j), $33,426.00, plus the amount of the loss left uncompensated by the amount of workers' compensation benefits.

Although the trial court made no determination of the total amount of plaintiff's damages, the Integon policy states: "If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum amount payable for injuries to you or a family member caused by an underinsured motor vehicle shall be the sum of the highest limit of liability for this coverage under each such policy." Both carriers cap their UIM coverage at $100,000.00, for an aggregate liability limit of $200,000.00. Thus, we conclude that plaintiff's uncompensated loss is $200,000.00 less the total amount of workers' compensation benefits received, $100,278.98, or $99,721.02. Pursuant to N.C. Gen. Stat. § 20-279.21(e), Integon and State Farm are liable for $99,721.02 plus the amount of the workers' compensation lien of $33,426.00, for a total of $133,147.02.

In its argument to this Court, plaintiff contends Integon provided primary UIM coverage for Austin, and State Farm provided secondary coverage through his father's policy. Therefore, plaintiff argues, Integon would have to exhaust payment of its UIM coverage before State Farm would be required to pay on its coverage. We disagree.

The Integon policy contains the following "other insurance" provision in the UIM section: "[I]f there is other applicable similar insurance, we will pay only our share of the loss. Our [share of the] loss is the proportion that our limit of liability bears to the total of all applicable limits." Accordingly, because Integon's $100,000.00 liability limit is one-half of the $200,000.00 aggregate liability limit, it is liable for one-half of the plaintiff's loss. We conclude that Integon and State Farm must prorate their liability and all applicable credits.

Prorating the total liability, Integon and State Farm each are liable for one-half of $133,147.02, or $66,573.51 each. Since Integon and State Farm are entitled to a credit for the liability proceeds received by plaintiff, the applicable UIM coverage for each carrier is the coverage limit of $100,000.00 less the credit for liability proceeds, $25,000.00 each, or $75,000.00. Thus, we hold Integon must pay to plaintiff $66,573.51 under its UIM coverage together with any accrued prejudgment interest up to its $75,000.00 limit of liability.

We remand this matter for entry of judgment consistent with this decision.

REVERSED AND REMANDED.

Judges TIMMONS-GOODSON and HUDSON concur.