JOHNNY V. BENTON, JR. AND VERONICA TYNDALL, PLAINTIFFS v. TIMOTHY S. HANFORD AND PROGRESSIVE SOUTHEASTERN INSURANCE COMPANY, DEFENDANTS

No. COA08-44

(Filed 20 January 2009)

1. **Insurance— automobile—UIM coverage—stacking of policies—Financial Responsibility Act**

   The trial court did not err by concluding that a tortfeasor's underinsured motorist (UIM) insurance policy which covers a person occupying the tortfeasor's vehicle may be stacked with the injured party's separate UIM policy in order to determine the total UIM coverage available to the injured party because: (1) the purpose of the Financial Responsibility Act is best served when every provision of the Act is interpreted to provide the innocent victim with the fullest possible protection; (2) the 2004 amendment was not applicable since there was only one claimant; and (3) the general definition of "underinsured highway vehicle" found in the Act provided that the amount of the stacked UIM coverage ($50,000 from the tortfeasor's Nationwide UIM policy + $100,000 from the injured party's Progressive policy = $150,000) was the applicable limit of underinsured motorist coverage for the vehicle involved in the accident, and the tortfeasor's vehicle was an underinsured highway vehicle since the $150,000 amount was greater than the $50,000 liability limits under the Nationwide policy.

### 2. Insurance— automobile—UIM coverage—primary and excess carriers—credit for liability payment

The underinsured motorist (UIM) coverage in a policy on the tortfeasor's vehicle in which a passenger was injured was primary and the UIM coverage in a policy insuring the injured passenger as a resident of the named insured's household was excess coverage, and the tortfeasor's primary UIM insurer was entitled to the credit for the liability insurance payment made to the passenger, where both policies contained "other insurance" clauses stating that any insurance provided with respect to a vehicle not owned by the insured shall be excess over any other collectible insurance.

Appeal by defendant from order entered 28 September 2007 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 26 August 2008.

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, and Henson & Fuerst, P.A., by William S. Hoyle, for plaintiff-appellees.*

*Young Moore and Henderson P.A., by Glenn C. Raynor, for defendant-appellant.*

*Maynard & Harris, PLLC, by C. Douglas Maynard, Jr., for amicus curiae North Carolina Academy of Trial Lawyers.*

STROUD, Judge.

This case presents two issues to this Court: (1) whether a tortfeasor's underinsured motorist ("UIM") insurance policy which covers a person occupying the tortfeasor's vehicle may be stacked with the injured party's separate UIM policy in order to determine the total UIM coverage available to the injured party, and (2) how the credit for the applicable liability coverage should be divided between the tortfeasor's insurer and the injured party's insurer. For the reasons which follow, we affirm the trial court.

### I. Background

On 27 October 2005 plaintiff Benton was a passenger in a 2001 Toyota operated by defendant Hanford. The Toyota collided with a tree causing bodily injury to Benton.

At the time of the accident, defendant Hanford was insured as a named driver in Nationwide Policy No. 6132S626920 ("the Nationwide

policy"). The Nationwide policy provided $50,000.00 per person in liability coverage and $50,000.00 per person in UIM coverage for, *inter alia*, a person occupying the covered vehicle. Plaintiff Benton was insured as a "household resident" on Progressive Southeastern Policy No. 11951100-1 ("the Progressive policy") owned by his mother, plaintiff Tyndall. The Progressive policy provided for $100,000.00 per person in UIM coverage. After the accident, Nationwide paid plaintiffs $50,000.00 in liability insurance benefits under its policy.

On 30 January 2007 plaintiffs filed a complaint in Superior Court, Nash County, seeking *inter alia*, "a judicial determination as to whether Progressive is responsible for paying up to a total of $100,000.00 in underinsured motorist coverage for this claim." Defendant Progressive filed an answer on 19 April 2007, asserting that its $100,000.00 UIM policy limit should be reduced by a credit for Nationwide's liability payment of $50,000.00, thereby limiting Progressive's UIM coverage to only $50,000.00. On 1 June 2007 defendant Progressive moved for summary judgment, requesting the trial court to declare that Progressive's coverage was limited to $50,000.00.

On 28 September 2007, the trial court entered summary judgment in favor of plaintiffs, declaring:

> 6. The Nationwide policy provided UIM coverage in the sum of $50,000.00 for the damages sustained by plaintiffs in the October 27, 2005 accident.

> . . . .

> 8. The Nationwide policy provides primary UIM coverage for purposes of the damages sustained by the plaintiffs in the October 27, 2005 accident, and the Progressive Southeastern policy provides excess UIM insurance benefits.

> 9. Nationwide is entitled to a credit of $50,000.00 to its $50,000.00 UIM limit, for the amount of the liability insurance paid under Nationwide's policy to the plaintiffs.

> 10. The Progressive Southeastern policy is entitled to no credit for the liability proceeds paid under the Nationwide policy to the plaintiffs.

> 11. The Progressive Southeastern policy provides available UIM coverage in the amount of $100,000.00 for the damages sustained by the plaintiffs in the October 27, 2005 accident.

Defendant Progressive appeals.

## II. Underinsured Highway Vehicle

[1] Defendant first argues that the Nationwide policy does not provide UIM coverage to plaintiff Benton as a passenger in the Toyota because the Toyota was not an "underinsured vehicle" for purposes of the Nationwide policy. Defendant argues that the definition of "underinsured motor vehicle" found in the Nationwide policy is dispositive, particularly the provision which expressly excludes from the definition "any vehicle . . . [w]hich is insured under Liability Coverage of this policy if such policy's limit of liability for Combined Uninsured/Underinsured Motorists Coverage is equal to or less than its limit of liability for Liability Coverage." Defendant reasons that because the liability limits and the UIM limits in the Nationwide policy are equal, the Toyota does not meet the definition of an "underinsured motor vehicle" under the terms of the policy. Therefore, defendant concludes, the Nationwide policy does not provide UIM coverage to plaintiff Benton. We disagree.

"[W]hether the tortfeasor's vehicle is an 'underinsured highway vehicle' as the term is used in N.C.G.S. § 20-279.21(b)(4)" is the "threshold question" in determining if UIM coverage applies. *Harris v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 187, 420 S.E.2d 124, 126 (1992); *Ray v. Atlantic Casualty Ins. Co.*, 112 N.C. App. 259, 261, 435 S.E.2d 80, 81 ("UIM coverage . . . necessarily depends on whether the tortfeasor's vehicle is an underinsured highway vehicle."), *disc. review denied*, 335 N.C. 559, 439 S.E.2d 151 (1993); *see also State Farm Mut. Auto. Ins. Co. v. Young*, 122 N.C. App. 505, 506, 470 S.E.2d 361, 361 (1996) ("[A]n underinsured highway vehicle as defined in G.S. § 20-279.21(b)(4) can include a motor vehicle owned by the named insured, and the provisions in the policies issued by plaintiff attempting to exclude such coverage are invalid and unenforceable." (Citation and quotation marks omitted.)), *disc. review denied*, 345 N.C. 353, 483 S.E.2d 191 (1997).

Notwithstanding the express language in the Nationwide policy quoted by defendant, the "provisions of the Financial Responsibility Act [], N.C. Gen. Stat. Chapter 20, Article 9A [], are written into every insurance policy as a matter of law. Where the language of an insurance policy conflicts with the provisions of the Act, the provisions of the Act prevail." *Austin v. Midgett*, 159 N.C. App. 416, 420, 583 S.E.2d 405, 408 (2003) (citations omitted), *modified on rehearing on other grounds*, 166 N.C. App. 740, 603 S.E.2d 855 (2004). Because the Financial Responsibility Act ("the Act") specifically defines "underinsured highway vehicle[,]" N.C. Gen. Stat. § 20-279.21(b)(4) (2005), we

turn to the Act and the cases interpreting it without regard to the definition of the term in the Nationwide policy.

Defendant contends that even if we reject the language of the policy and rely on the language of the Act, we should reach the same result, i.e., that the Toyota involved in the accident is not an "underinsured highway vehicle" under the terms of the statute. Again, we disagree.

The Act defines "underinsured highway vehicle" generally as:

a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.

N.C. Gen. Stat. § 20-279.21(b)(4) (2005). Statutory interpretation begins with "[t]he cardinal principle of statutory construction . . . that the intent of the legislature is controlling. In ascertaining the legislative intent, courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish." *State ex rel. Utilities Commission v. Public Staff*, 309 N.C. 195, 210, 306 S.E.2d 435, 443-44 (1983) (citations omitted). Specific to the Act, the North Carolina Supreme Court has stated:

The avowed purpose of the Financial Responsibility Act is to compensate the innocent victims of financially irresponsible motorists. The Act is remedial in nature and is to be *liberally construed* so that the beneficial purpose intended by its enactment may be accomplished. The purpose of the Act, we have said, is best served when every provision of the Act is interpreted to *provide the innocent victim with the fullest possible protection.*

*Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 573-74, 573 S.E.2d 118, 120 (2002) (citations, quotation marks, ellipses and brackets omitted; emphasis added).

In keeping with the purpose of the Act, applicable UIM coverage may be stacked interpolicy to calculate the "applicable limits of underinsured motorist coverage for the vehicle involved in the accident" for the purpose of determining if the tortfeasor's vehicle is an "underinsured highway vehicle." *N. C. Farm Bureau Mut. Ins. Co. v. Bost*, 126 N.C. App. 42, 50-51, 483 S.E.2d 452, 458 (the legislature's use

of the plural "limits" in the statutory definition of "underinsured highway vehicle" means that an insured may stack all applicable UIM policies to determine if the definition is met), *disc. review denied,* 347 N.C. 138, 492 S.E.2d 25 (1997).

Despite *Bost* and other cases which have recognized interpolicy stacking of UIM coverages, *see, e.g., Harrington v. Stevens,* 334 N.C. 586, 434 S.E.2d 212 (1993), defendant contends that the multiple claimant exception added to the definition of "underinsured highway vehicle" in 2004 controls, disallowing stacking in this case. The multiple claimant exception (or "2004 amendment") reads, with the portion relied on by defendant underlined:

> For purposes of an underinsured motorist claim asserted by a person injured in an accident where more than one person is injured, a highway vehicle *will also be* an "underinsured highway vehicle" if the total amount actually paid to that person under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy. Notwithstanding the immediately preceding sentence, <u>a highway vehicle shall not be an "underinsured motor vehicle" for purposes of an underinsured motorist claim under an owner's policy insuring that vehicle if the owner's policy insuring that vehicle provides underinsured motorist coverage with limits that are less than or equal to that policy's bodily injury liability limits</u>.

N.C. Gen. Stat. § 20-279.21(b)(4) (2005) (emphasis added).

Defendant contends, pursuant to the above-underlined portion of the 2004 amendment, that because the Nationwide policy insuring the Toyota provided UIM coverage with a limit of $50,000.00 per person, an amount equal to the policy's bodily injury liability coverage limits, the Toyota is not an "underinsured highway vehicle" within the meaning of the Act. Defendant recognizes that both sentences were added together in the 2004 amendment but contend, "there is nothing within the language of the amendment limiting the application of the second sentence to the multiple claimant scenario addressed by the first sentence."

We disagree and hold that the exception in the 2004 amendment does not apply *sub judice.* Keeping in mind that we must interpret the provisions of the Act liberally, in order to "provide the innocent vic-

tim with the fullest possible protection[,]" *Liberty Mut. Ins. Co.*, 356 N.C. at 574, 573 S.E.2d at 120, we conclude that by including the phrase "[n]otwithstanding the immediately preceding sentence," the General Assembly literally meant to limit the above-underlined provision to the "preceding sentence," which refers to the multiple claimant exception added in the 2004 amendment. Accordingly, we conclude that this sentence applies only to accidents with multiple claimants. Because there is only one claimant *sub judice*, the 2004 amendment, including the language highlighted by defendant, does not apply here and we must use the general definition of "underinsured highway vehicle" found in the Act. *Bost*, 126 N.C. App. at 51-52, 483 S.E.2d at 458.

Using the general definition of "underinsured highway vehicle," it follows that the Nationwide UIM policy limit ($50,000.00) may be stacked with the Progressive policy limit ($100,000.00) to determine whether the Toyota is an underinsured motor vehicle. *Id.* The amount of the stacked UIM coverages ($50,000.00 + $100,000.00 = $150,000.00) is the "applicable limits of underinsured motorist coverage for the vehicle involved in the accident[.]" Because this amount ($150,000.00) is greater than the liability limits ($50,000.00) under the Nationwide policy, we conclude that the Toyota is an "underinsured highway vehicle" within the meaning of the Act.

### III. Allocation of the Credit

[2] After calculating the amount of stacked UIM coverage at $150,000.00, the trial court credited Nationwide's UIM coverage ($50,000.00) with the entire amount of Nationwide's liability payment ($50,000.00) after concluding that "[t]he Nationwide policy provides primary UIM coverage for purposes of the damages sustained by the plaintiffs in the October 27, 2005 accident, and the Progressive Southeastern policy provides excess UIM insurance benefits." Defendant argues that this conclusion is error, and that Progressive is entitled to the entire credit from the Nationwide liability policy. Defendant argues on this issue is essentially a rehash of its first argument, to wit: "[a]s the only provider of UIM coverage to the plaintiffs, Progressive Southeastern is entitled to receive the entire $50,000.000 [sic] credit from liability insurance paid by Nationwide." Again, we disagree with defendant.

Before making payment to the injured party against the "applicable limits of underinsured motorist coverage for the vehicle involved in the accident," the "UIM carrier[s are] entitled to a credit for pay-

ments made by the liability carrier." *Walker v. Penn Nat'l Sec. Ins. Co.*, 168 N.C. App. 555, 559, 608 S.E.2d 107, 110 (2005). The statutory authority for this rule is N.C. Gen. Stat. § 20-279.21(b)(4) (2005), which states: "In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident." *Id.*; *Iodice v. Jones*, 133 N.C. App. 76, 77, 514 S.E.2d 291, 292 n.2 (1999) ("UIM carriers are entitled to set off the amount received by a claimant from the tortfeasor's liability carrier against any UIM amounts owed.").

When there is more than one UIM carrier involved, allocation of the credit for liability payments is necessary. *Onley v. Nationwide Mutual Ins. Co.*, 118 N.C. App. 686, 691, 456 S.E.2d 882, 885, *disc. review denied*, 341 N.C. 651, 462 S.E.2d 514 (1995). If neither policy has an "other insurance" clause, or if each policy has an "other insurance" clause which effectively cancels out the other, the credit is shared pro rata between the two insurance carriers. *Bost*, 126 N.C. App. at 52, 483 S.E.2d at 458-59 (allocating the credit pro rata between two UIM insurers when identical "other insurance" clauses were "deemed mutually repugnant" and therefore nullified each other); *Aetna Casualty and Surety Co. v. Continental Ins. Co.*, 110 N.C. App. 278, 283, 429 S.E.2d 406, 409 (1993) ("When neither of two competing insurance policies has an 'other insurance' clause and both cover the loss which has been sustained, liability is allocated pro rata when no contrary policy stipulation is involved." (Citation and quotation marks omitted.)). However, if one or both policies contain an "other insurance" clause, and the clauses do not effectively cancel each other out, the language of the clause determines which carrier is the "primary" insurer and which is the "excess" insurer. *Iodice*, 133 N.C. App. at 78, 514 S.E.2d at 293 (allocating the liability credit on the basis of the "other insurance" clause in each policy). The "primary" insurer is entitled to the entire credit. *Id.* at 79, 514 S.E.2d at 293.

In the case *sub judice*, both policies contain identical "other insurance" clauses:

> In addition, if there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

The relevant facts and policy language *sub judice* are apposite to. the facts and policy language in *Iodice*, 133 N.C. App. 76, 514 S.E.2d 291:

Both the GEICO policy and the Nationwide policy contain the following "other insurance" paragraph:

[I]f there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

*Id.* at 77, 514 S.E.2d at 292.

Accordingly, the holding of *Iodice* controls this case:

[T]he "excess" clause of the "other insurance" paragraph in each policy provides: "Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."

. . . .

[T]he "other insurance" clauses in this case, although identically worded, do not have identical meanings and are therefore not mutually repugnant. . . . [T]he Nationwide "excess" clause reads: "Any insurance we provide with respect to a vehicle [the Nationwide policy holder] does not own shall be excess over any other collectible insurance." It follows that Nationwide's UIM coverage is *not* "excess" over other collectible insurance (and is, therefore, primary), because the vehicle in which the accident occurred is owned by [the Nationwide policy holder]. The GEICO "excess" clause reads: "Any insurance we provide with respect to a vehicle [the GEICO policy holder] does not own shall be excess over any other collectible insurance." It follows that GEICO's UIM coverage is "excess" (and is, therefore, secondary), because the vehicle in which the accident occurred is not owned by [the GEICO policy holder]. Accordingly, Nationwide provides primary UIM coverage in this case. As such, Nationwide is entitled to set off the entire [credit from the liability policy] against any UIM amounts it owes [the injured party], because the primary provider of UIM coverage is entitled to the credit for the liability coverage.

133 N.C. App. at 78-79, 514 S.E.2d at 293 (citation, quotation marks, original brackets and ellipses omitted; original emphasis retained).

DAUGHERTY v. CHERRY HOSP.

[195 N.C. App. 97 (2009)]

According to the "other insurance" clauses in both policies *sub judice,* as in *Iodice,* the UIM coverage for the vehicle owned by the policy holder is not excess, but is "primary" coverage. 133 N.C. App. at 78-79, 514 S.E.2d at 293-94. In the case *sub judice,* this is the Nationwide policy covering the Toyota involved in the accident. The other policy *sub judice,* the Progressive policy, insured the injured party as a household resident of a named insured, in a vehicle not owned by the named insured. According to *Iodice* and the language of the policy, this is "excess" coverage. *Id.* As the provider of primary coverage, Nationwide is entitled to the entire credit from the liability payment. The trial court did not err in so concluding.

## IV. Conclusion

Plaintiffs were entitled to stack both the Nationwide and the Progressive policies in determining whether the Toyota involved in the accident was an "underinsured highway vehicle" for purposes of UIM insurance coverage. Furthermore, Nationwide was entitled to the entire credit for its liability payment as the primary insurer. Accordingly, the order of the trial court granting summary judgment in favor of plaintiffs is affirmed.

Affirmed.

Chief Judge MARTIN and Judge McGEE concur.