NO. COA13-640

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

NATIONWIDE MUTUAL INSURANCE
COMPANY, INC.,
    Plaintiff,

v.                                Wake County
                                    No. 12 CVS 8135

INTEGON NATIONAL INSURANCE
COMPANY and STATE NATIONAL
INSURANCE COMPANY,
    Defendants.


Appeal by plaintiff from order entered 27 March 2013 by Judge Carl R. Fox in Wake County Superior Court. Heard in the Court of Appeals 23 October 2013.

> *Cranfill Sumner & Hartzog, LLP, by George L. Simpson, IV, for plaintiff-appellant.*
>
> *Bennett & Guthrie, PLLC, by Rodney A. Guthrie, for defendant-appellee Integon National Insurance Company.*
>
> *Pinto Coates Kyre & Bowers, PLLC, by Deborah J. Bowers, for defendant-appellee State National Insurance Company.*


HUNTER, JR., Robert N., Judge.


Plaintiff Nationwide Mutual Insurance Company ("Plaintiff") appeals from a 27 March 2013 order granting summary judgment in favor of Integon National Insurance Company ("Integon") and State

National Insurance Company ("State National").[1] Upon review, we find the trial court erred by not applying a pro rata distribution of the credit paid by the underinsured motorist's insurance provider to all three underinsured motorist insurance ("UIM") policy providers. We reach this conclusion because the respective excess clauses were (i) mutually repugnant and (ii) because the claimant was a Class I insured under all three UIM policies. Under *North Carolina Farm Bureau v. Bost*, 126 N.C. App. 42, 483 S.E.2d 452 (1997), the trial court was required to allocate credits and liabilities amongst the three UIM policyholders on a pro rata basis if both of these conditions are met. We thus reverse the trial court and remand for the trial court to enter summary judgment for Plaintiff.

## I. Facts & Procedural History

This declaratory judgment action arose out of an insurance coverage question allocating proceeds of three separate UIM policies to pay a wrongful death claim. Plaintiff filed its original complaint for declaratory judgment on 8 June 2012, which was amended by consent on 7 December 2012.[2] Integon and State

---

[1] Collectively, Integon and State National will be referred to as "Defendants."

[2] The complaint was amended to reflect ownership of the insurance policy held by State National, rather than the originally named party, Direct General Insurance Company. State National is a

National timely answered Plaintiff's complaint on 10 January 2013 and 17 January 2013 respectively. All parties moved for summary judgment. The summary judgment motions were heard by Judge Carl R. Fox in Wake County Superior Court on 7 March 2013. Judge Fox denied Plaintiff's motion for summary judgment and allowed Defendants' motions on 27 March 2013. Plaintiff filed a timely written notice of appeal on 18 April 2013. Plaintiff and Defendants stipulated to the following facts.

A three-vehicle accident occurred on 23 August 2011, involving the decedent Nelson Lee Clark ("Clark"), the tortfeasor Gaye Holman Ikerd ("Ikerd"), and Lucille Pitts ("Pitts"). Ikerd ran a red light and collided with Clark's motorcycle. Pitts was driving a separate vehicle that ran over Clark after he was thrown from his motorcycle. Ikerd admitted liability to Clark's estate, and her liability insurer paid the policy limit of $50,000. Pitts was not found liable for the incident.

Clark was insured for UIM coverage under three policies: (1) the Integon policy, number NCV 9474162, issued to Nelson Clark as the named insured and covering the motorcycle that Clark was driving at the time of the accident in the amount of $100,000 per person; (2) the State National policy, number 47 NCQD 118505586,

---

subsidiary of Direct General Insurance Company.

issued to Nelson Clark as the named insured in the amount of $50,000 per person; and (3) a policy issued by Plaintiff, number 6132 019939, to Walter Lee and Nancy Ikard Clark as named insureds in the amount of $50,000 per person.  Mr. and Mrs. Clark were the decedent's parents, and he was a resident of their household at the time of the accident.  The parties stipulated to the following relevant policy provisions:

> **Nationwide Policy:**
> Policyholder – Named Insured: Walter Lee and Nancy Ikard Clark
>
> UM/UIM limits: $50,000 per person/ $100,000 per accident
>
> Other Insurance
> If this policy and any other auto insurance policy apply to the same accident, the maximum amount payable under all applicable policies for all injuries to an insured caused by an uninsured motor vehicle or underinsured motor vehicle shall be the sum of the highest limit of liability for this coverage under each policy.
>
> In addition, if there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

**Integon policy[3]:**
Policyholder – Named Insured: Nelson Clark

UM/UIM limits: $100,000 per person/ $300,000 per accident

OTHER INSURANCE
If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum amount payable under all applicable policies for all injuries caused by an uninsured motor vehicle under all policies shall not exceed the highest applicable limit of liability under any one policy.

If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum amount payable for injuries to you or a family member caused by an underinsured motor vehicle shall be the sum of the highest limit of liability for this coverage under each such policy.

In addition, if there is other applicable similar insurance, we will pay only our share of the loss. Our loss is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

**State National policy:**
Policyholder – Named Insured: Nelson Clark

UM/UIM limits: $50,000 per person/ $100,000 per accident

---

[3] The "Other Insurance" clause in the Integon policy contains the word "loss" instead of "share" in the second sentence of the clause. However the Integon policy defines "loss" the same way both other policies define "share": "the proportion that our limit of liability bears to the total of all applicable limits."

OTHER INSURANCE
If this policy and any other auto insurance policy apply to the same accident, the maximum amount payable under all applicable policies for all injuries to an insured caused by an uninsured motor vehicle or underinsured motor vehicle shall be the sum of the highest limit of liability for this coverage under each policy.

In addition, if there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

All three policies define the term "you" as:

Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

After reviewing the policies, the pleadings, the parties' motions, the parties' memoranda, and hearing the parties' arguments, Judge Carl Fox granted summary judgment on behalf of Defendants based on Defendants' contention that their policies should be considered primary and Plaintiff's policy should be considered excess. The trial court concluded "as a matter of law that there is no genuine issue of any material fact in this case

that the underinsured motorist coverage afforded . . . on those same claims is excess[.]"

## II. Jurisdiction & Standard of Review

On appeal, Plaintiff asks this Court to reverse the trial court based upon this Court's holding in *Bost*. 126 N.C. App. at 52, 483 S.E.2d 458-59.

This Court has jurisdiction to review the matter pursuant to N.C. Gen. Stat. § 7A-27(b) (2013). "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)). "'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

## III. Analysis

Plaintiff argues that the holding in *Bost* requires a pro rata distribution of the $50,000 credit supplied by the underinsured

motorist Ikerd's insurer. Plaintiff argues that *Bost* requires pro rata distribution because (i) the three policies' "other insurance" sections are mutually repugnant and (ii) claimant Clark was a Class I insured under the three policies, which requires pro rata distribution under *Bost*. Defendants argue that the language used in the UIM policies controls and class designation is not relevant when multiple UIM excess clauses may be read together harmoniously. *See Iodice v. Jones*, 133 N.C. App. 76, 79 & n.3, 514 S.E.2d 291, 293 & n.3 (1999).

For purposes of clarity, we hold that courts resolving UIM credit/liability apportionment disputes amongst multiple providers must make the following inquiry in deciding these cases. First the language used in the excess clause must be identical between the excess clauses of the respective UIM policies, or "mutually repugnant." *See Sitzman v. Gov't Employees Ins. Co.*, 182 N.C. App. 259, 262–64, 641 S.E.2d 838, 840–42 (2007) (noting that identical language is mutually repugnant, requiring that neither is given effect, and applying the rule to non-identical excess clauses). If the language is not identical, the inquiry ends, as the excess policies are not mutually repugnant, and the trial court may apply the facial policy language to determine distribution. *Id.*

If this first prong is satisfied and the policies are repugnant, the second inquiry is to determine whether the respective UIM carriers are in the same class; if so, the trial court must apportion liabilities and credits on a pro rata basis. *Bost*, 126 N.C. App. at 52, 483 S.E.2d at 458-59.

Only after considering the "class" of the claimant do we reach the third step of the inquiry. If separate classes exist, a primary/excess distinction may be drawn despite identical language. *Iodice*, 133 N.C. App. at 79 & n.3, 514 S.E.2d at 294 & n.3. Such identical clauses may allow a finding of non-repugnancy after applying the policies' definitions, specifically relating to ownership identified in the policy. *Id.*

Because this issue was settled in *Bost* and we are bound to follow this holding, we must disagree with Defendants' contention that identical excess clauses as applied to claimants all situated within the same class may be read together "harmoniously." *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). As such, we reverse the trial court, and remand to the trial court for a pro rata distribution of the $50,000

credit supplied by Ikerd's insurer.[4]  The three tests described above are more fully discussed hereinafter.

### i. Mutually Repugnant Excess Clauses

The first item in the inquiry is to determine whether or not the respective excess clauses are identical.  Identical "excess clauses" are typically deemed mutually repugnant and neither excess clause is given effect.  *Integon Nat'l. Ins. Co. v. Phillips*, 212 N.C. App. 623, 630, 712 S.E.2d 381, 386 (2011) ("Due to the excess clauses being identically worded, it is impossible to determine which policy is primary, and thus the excess clauses must be deemed mutually repugnant, with neither clause being given effect." (quotation marks and citation omitted)); *see also* James E. Snyder, Jr., North Carolina Automobile Insurance Law § 33-5 (Supp. 2013).  Where identical excess clauses exist, the policies are read as if the identical excess clauses were not present.  *Iodice* at 78, 514 S.E.2d at 293 ("Where it is impossible to

---

[4] If Nationwide is considered "excess," Nationwide pays the full amount of its $50,000 liability limit under the UIM coverage, Integon pays $66,666.67 and State National pays $33,333.33. Integon and State National both divided the $50,000 paid by Ikerd's insurer and received $25,000 each.

A pro rata distribution would net Nationwide a credit of 25 percent of its liability limit, or $12,500.  Nationwide would then be liable for $37,500, rather than the full $50,000 of its UIM policy. Integon would pay $75,000 and State National would pay $37,500 under a pro rata distribution.

determine which policy provides primary coverage due to identical 'excess' clauses, 'the clauses are deemed mutually repugnant and neither . . . will be given effect.'" (quoting *N.C. Farm Bureau Mut. Ins. Co. v. Hilliard*, 90 N.C. App. 507, 511, 369 S.E.2d 386, 388 (1988)) (alterations in original)); *Onley v. Nationwide Mut. Ins. Co.*, 118 N.C. App. 686, 690, 456 S.E.2d 882, 884, *disc. review denied*, 341 N.C. 651, 462 S.E.2d 514 (1995).

When mutually repugnant clauses exist, the multiple UIM carriers share both credits and liabilities pro rata, as sharing "the liability in proportion to the coverage but not the credit in a like manner is irrational." *Onley*, 118 N.C. App. at 691, 456 S.E.2d at 885; *see also Harleysville Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 165 N.C. App. 543, 600 S.E.2d 901, 2004 WL 1610050 at *3 (2004) (unpublished) ("'Where an insured is in the same class under two policies and the 'other insurance' clauses in the policies are mutually repugnant, the claims will be prorated.'" (quoting *Hlasnick v. Federated Mut. Ins. Co.*, 136 N.C. App. 320, 330, 524 S.E.2d 386, 393, *aff'd on other grounds in part and disc. review improvidently allowed in part*, 353 N.C. 240, 539 S.E.2d 274 (2000))).

The converse is also true—when policies are *not* identical in form or effect, they are not mutually repugnant. *Sitzman*, 182

N.C. App. at 264, 641 S.E.2d at 842 (noting the differences between two policies' excess clauses in both form and effect); *see also Hlasnick*, 136 N.C. App. at 330, 524 S.E.2d at 393 ("[T]here is no need to consider the class into which an insured falls or to prorate coverage where, as here, the 'other insurance' clauses are not mutually repugnant, but may be read together harmoniously."). In *Sitzman*, two UIM policies' excess clauses were at issue. The first policy was issued by Geico to the claimant in North Carolina and uses the standard North Carolina excess clause language used by both Plaintiff and Defendants' policies discussed above in Section I *supra*. 182 N.C. App. at 262, 641 S.E.2d at 841. The second policy was issued by Harleysville in Virginia to the claimant's parents. *Id.* at 261, 641 S.E.2d at 840. The policy was interpreted under Virginia law as it was issued in that state. *Id.* at 263, 641 S.E.2d at 842. The Harleysville policy also contained an excess clause that was distinct from the standard North Carolina excess clause:

> [T]he following priority of policies applies and any amount available for payment shall be credited against such policies in the following order of priority:
>
> > First Priority[:] The policy applicable to the vehicle the "insured" was "occupying" at the time of the accident.

Second Priority[:] The policy applicable to a vehicle not involved in the accident under which the "insured" is a named insured.

Third Priority[:] The policy applicable to a vehicle not involved in the accident under which the "insured" is other than a named insured.

*Id.* at 263, 641 S.E.2d at 841-42 (alterations in original). This Court explicitly noted the differences between the wording of the Geico and Harleysville policy:

Unlike the GEICO excess clause, the Harleysville policy does not differentiate between policies based upon ownership of the vehicle in which the insured was riding at the time of the accident. Rather, the Harleysville policy differentiates between the first priority on one hand, and the second and third priorities on the other, based upon whether the policy is applicable to (1) the vehicle involved in the accident or (2) a vehicle not involved in the accident. The Harleysville policy further differentiates between the second and third priorities depending upon whether the insured is a named insured or other than a named insured.

The Harleysville policy does not define the phrase "applicable to [the or a] vehicle." GEICO argues the phrase "applicable to [the or a] vehicle" is synonymous with "covering [the or a] vehicle." Under that interpretation, the vehicle referred to would be the vehicle listed as an insured vehicle under the policy. The bicycle is not listed as an insured vehicle under either policy. Therefore, the GEICO policy would have second priority because it is "[t]he policy [covering] a vehicle not involved in the accident [i.e.,

> Plaintiff's 1987 Buick] under which [Plaintiff] is a named insured." GEICO further argues the Harleysville policy has third priority because it is "[t]he policy [covering] a vehicle not involved in the accident [i.e., Plaintiff's parents' vehicles] under which [Plaintiff] is other than a named insured." Under this interpretation, the GEICO policy would have higher priority and would therefore be primary under the Harleysville excess clause. *Accordingly, the GEICO policy would be primary under both the GEICO and Harleysville policies, and the excess clauses would not be mutually repugnant.*

*Sitzman*, 182 N.C. App. at 264, 641 S.E.2d at 842 (emphasis added) (alterations in original). As such, the excess clauses under consideration were not identical and not mutually repugnant, necessitating no further inquiry.

However, identical policy language is not axiomatically mutually repugnant if the excess clauses at issue do not have the same meaning as applied to the facts of the case. *See Iodice*, 133 N.C. App. at 78, 514 S.E.2d at 293 (agreeing with appellant that the "'other insurance' clauses in this case, although identically worded do not have identical meanings and are therefore not mutually repugnant"). In *Iodice*, this Court held:

> Because "you" is expressly defined as the named insured and spouse, the Nationwide "excess" clause reads: "[A]ny insurance we provide with respect to a vehicle [Penney] do[es] not own shall be excess over any other collectible insurance." It follows that

Nationwide's UIM coverage is *not* "excess" over other collectible insurance (and is, therefore, primary), because the vehicle in which the accident occurred is owned by Penney. The GEICO "excess" clause reads: "[A]ny insurance we provide with respect to a vehicle [Iodice's mother] do[es] not own shall be excess over any other collectible insurance." It follows that GEICO's UIM coverage is "excess" (and is, therefore, secondary), because the vehicle in which the accident occurred is not owned by Iodice's mother. Accordingly, Nationwide provides primary UIM coverage in this case.

*Id.* at 78-79, 514 S.E.2d at 293 (alterations in original).

Thus, where identically worded policy provisions existed but the actual application of the policies negated mutual repugnancy, this Court held that the "excess" UIM policy was not entitled to a set-off credit. *Id.* In so holding, however, this Court reaffirmed the class distinction discussed in *Bost* and considered *infra*, stating that a "Class II insured may be treated differently than a Class I insured." *Id.* at 79 n.3, 514 S.E.2d at 293 n.3. *Iodice* thus stands for the proposition that identical language in excess clauses may be read together harmoniously if a claimant is categorized under separate "classes."

A subsequent case, *Hlasnick*, is instructive in prescribing and applying the required three questions in this area of the law. In *Hlasnick*, a husband and wife were injured in an automotive accident caused by a negligent driver. *Id.* at 321-22, 524 S.E.2d

at 387-88.  The husband was driving a Dodge pick-up truck owned by the car dealership where he worked, and was running a personal errand while his wife was present.  *Id.* at 322, 524 S.E.2d at 388. The negligent driver was underinsured, the driver's policy carrier tendered its limits, and the husband and wife sought recovery under their UIM policies.  *Id.*  The husband's employer had UIM coverage, while both husband and wife each had personal insurance policies that carried UIM coverage.  *Id.*

This Court held the policies were not mutually repugnant because the "term 'you' in the different policies refers to different individuals; *and* the 'other insurance' provisions in the policies are not identical," meaning the policies could thus be read together harmoniously.  *Id.* at 330, 524 S.E.2d at 392-93 (emphasis added).  This Court also noted the claimants fit within separate classes, but held that even had the claimants been within the same class under both UIM policies, the language of the respective excess clauses was not mutually repugnant.  *Id.* at 330, 524 S.E.2d at 392 ("By contrast, plaintiffs here are second-class insureds under Federated Mutual's policy, but are first-class insureds under State Farm's policy[.]").  This Court contrasted *Hlasnick* with *Smith v. Nationwide Mutual Ins. Co.*, 328 N.C. 139, 400 S.E.2d 44 (1991), where "there were two policies.  The insureds

were in the same class under both policies, the term 'you' in each policy referred to the same individual, and the policies contained identical 'other insurance' provisions." *Hlasnick*, 136 N.C. App. at 330, 524 S.E.2d at 392.

Here, the language contained in the "excess clause" is identical in all three policies. *Id.* at 330, 524 S.E.2d at 392–93; *see also Phillips*, 212 N.C. App. at 630, 712 S.E.2d at 386 (noting where identical language exists, a presumption of repugnancy exists). Thus, the first part of the inquiry is satisfied, however our work is not finished. As *Iodice* noted, identically-worded policies may be read together "harmoniously," but that reading is predicated on whether the claimant falls within different "classes" between the respective policies. 133 N.C. App. at 79 n.3, 514 S.E.2d at 293 n.3; *Hlasnick*, 136 N.C. App. at 330, 524 S.E.2d at 393. Thus, whether we may reach the third portion of our inquiry (whether the identical excess clauses may be read harmoniously) depends on the classes of the UIM providers, as announced in *Bost* and affirmed in *Iodice*, *Hlasnick*, *Harleysville*, *Sitzman*, and *Benton v. Hanford*, 195 N.C. App. 88, 92, 671 S.E.2d 31, 34 (2009).

### ii. Class Recognition under *Bost*

This Court in *Bost* noted a distinction with how liabilities and credits are apportioned according to the class of the "persons insured:"

> [g]enerally, the first class of "persons insured" are the "named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise." All persons in the first class are treated the same for insurance purposes. When "excess" clauses in several policies are identical, the clauses are deemed mutually repugnant and neither excess clause will be given effect, leaving the insured's claim to be pro rated between the separate policies according to their respective limits.

126 N.C. App. at 52, 483 S.E.2d at 458-59 (internal citations omitted). *Bost* identified and categorized these "classes" in the relevant statute. *Id.* at 52, 483 S.E.2d at 458; N.C. Gen. Stat. § 20-279.21 (2013) ("'[P]ersons insured' means the named insured and while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise[.]"). Despite efforts to overturn *Bost*, the class distinction drawn in *Bost* remains today. Defendant Appellant's New Brief, *Harleysville Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 359 N.C. 421, 611 S.E.2d 832 (2005) No. 444PA04, 2004 WL 3120959 at *23-24 ("Accordingly, *Bost* was decided incorrectly and should

be overruled. Because the Court of Appeals based its decision in the present case on *Bost*, the Court of Appeals decided the present case incorrectly as well, and its decision in the present case should be reversed.").

Defendants point to decisions decided subsequent to *Bost*, but none of these cases overrule *Bost* and all involve either excess clauses that are not mutually repugnant or distinctions in classes of underinsured motorist policies. *See Sitzman*, 182 N.C. App. at 265, 267, 641 S.E.2d at 843, 844 (finding that the two UIM policies were not mutually repugnant due to different wording and Virginia's choice not to recognize North Carolina's class distinction (citing *Dairyland Ins. Co. v. Sylva*, 409 S.E.2d 127, 128 (Va. 1991)); *Harleysville*, 165 N.C. App. 543, 600 S.E.2d 901, 2004 WL 1610050 at *3 ("While Nationwide points to two decisions by this Court subsequent to *Bost* as supporting its position, each of those cases recognizes that *Bost* controls when, as here, the injured party is a Class I insured under each of the policies at issue."); *Hlasnick*, 136 N.C. App. at 330, 524 S.E.2d at 392-93 ("[P]laintiffs here are second-class insureds under Federated Mutual's policy, but are first-class insureds under State Farm's policy; the term 'you' in the different policies refers to different individuals; and the 'other insurance' provisions in the policies are not identical.");

*Iodice*, 133 N.C. App. at 79 n.3, 514 S.E.2d at 293 n.3 (holding *Bost* was distinguishable because the plaintiff in *Bost* was "a Class I insured under both policies" and stating a "Class II insured may be treated differently than a Class I insured").

The one case addressing this issue that does not mention the Class I/Class II distinction is *Benton*, and the facts of that case include a Class I UIM provider and a Class II UIM provider, making the excess and primary distinction this Court drew appropriate. 195 N.C. App. at 97, 671 S.E.2d at 36. In *Benton*, the claimant was injured while a passenger-guest in a vehicle that struck a tree. *Id.* at 90, 671 S.E.2d at 32. Nationwide provided UIM coverage that applied to the vehicle and its occupants involved in the accident, a vehicle owned by the operator. *Id.* at 97, 671 S.E.2d at 36. The claimant also received UIM coverage as a member of his mother's household under a Progressive insurance policy. *Id.* As such, the claimant was a Class II insured under the Nationwide policy (as a passenger-guest) and a Class I insured under his mother's Progressive policy (as a resident-relative). Because the classes of the UIM policies were different, this Court could conduct the analysis laid forth in *Iodice* to find the Nationwide policy was "primary" and the Progressive policy was "excess." *Id.*

The facts of *Bost* were also similar to the present case:

> Carrie Bost was not a named insured under Larry Bost's insurance policy with Farm Bureau. Both Farm Bureau and defendant Allstate insured Carrie Bost as a first class insured because she was a relative and resident of the households of both Larry and Cara Bost. Both policies have "Other Insurance" provisions which are identical, and therefore, the provisions nullify each other, leaving Farm Bureau and defendant Allstate to share the Ezzelle settlement on a pro rata basis.

126 N.C. App. at 52, 483 S.E.2d at 459. Here, the claimant Clark was a Class I insured under all three UIM policies and the three policies all contained identical language. Clark also held two policies (the Integon policy and the State National Policy) as the named policyholder and was a relative resident of his parents' household, making him a Class I beneficiary of their Nationwide UIM policy. Under *Bost*, the credit paid by Ikerd's insurer must be distributed pro rata amongst Plaintiff and Defendants. Because the policies are (i) identical and (ii) claimant was a member of the same class within the excess clause of all three UIM policies, we cannot reach the third consideration of whether the identical language of the excess clause, as applied, may be read harmoniously amongst the excess clauses. We thus reverse the trial court and remand for a pro rata distribution of the credit.

## IV. Conclusion

Because (i) all three policies were mutually repugnant and (ii) the claimant was a Class I insured under all three policies, pro rata distribution of the $50,000 credit provided by Ikerd is required under *Bost*. For the foregoing reasons, the trial court's granting of summary judgment for Defendants is

REVERSED AND REMANDED FOR ENTRY OF SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF.

Judges ROBERT C. HUNTER and CALABRIA concur.